## MARYLAND DREDGING & CONTRACTING CO., Use of MARYLAND CASUALTY CO. et al., v. HINES, Director General of Railroads, et al.

(Circuit Court of Appeals, Fourth Circuit.   December 21, 1920.)

### No. 1830.

1. **Carriers ⬅═280 (1)—Owe highest degree of care to persons waiting to board train.**

    Persons waiting to board a train, or in the act of doing so, at a place where they are invited to be, are entitled to receive from the carrier the highest degree of care for their safety consistent with the mode of conveyance and its practical operation.

2. **Carriers ⬅═302 (1)—Must furnish police force sufficient to prevent anticipated crowding of passengers.**

    Though carrier is not required to furnish a police force sufficient to overcome all violence to passengers from strangers not reasonably to be expected, it must furnish sufficient force to protect the passengers from assaults or violence of other passengers or strangers, which are reasonably to be expected, including the protection against the rush of a crowd trying to board a train at a station.

3. **Carriers ⬅═287 (1)—Not liable for failure to police military reservation.**

    A carrier, which furnished to the United States government under contract a train to transport its workmen to a city from a station on the reservation, which was subject to exclusive control of military authorities and policed by them, is not liable for injuries to a passenger crowded under the train, because the police force furnished by the military authorities was insufficient to control the crowd.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by the Maryland Dredging & Contracting Company, for the use of the Maryland Casualty Company and Frank O. Stromberg, against Walker D. Hines, Director General of Railroads, and another. Judgment for defendants on a directed verdict, and plaintiff brings error.   Affirmed.

Albert J. Fleischmann, of Baltimore, Md. (H. Mortimer Kremer, of Baltimore, Md., on the brief), for plaintiff in error.

Shirley Carter, of Baltimore, Md., for defendants in error.

Before KNAPP and WOODS, Circuit Judges.

WOODS, Circuit Judge.   In December, 1918, the United States government was constructing a spur track as a military road from Aberdeen, a station on the Pennsylvania Railroad, into the proving grounds near by.   The work was done under contract by the Maryland Dredging Company.   The Director General, operating the Pennsylvania Railroad Company, ran a work train from Baltimore to Aberdeen to carry the men engaged in the construction of the road and other work in the proving grounds.   When five or six miles of the military road had been built, the War Department contracted with the Director General to run from Aberdeen a work train on the government spur track to its end, so as to carry the workmen into the proving grounds and bring them back to Baltimore.   The compensation for this service

into the proving grounds was not on a basis of fare for each workman, but was a fixed sum a day for the use of the locomotive and cars and the service of the crew. The Director General had no other right, authority, or duty connected with this military spur track beyond the running of this train and the carrying of the workmen. The military authorities ran on the same track a small locomotive and cars for other purposes. Within the proving grounds all the facilities for taking on and discharging passengers were under the control and direction of the War Department. About 2,000 men were carried on each work train, and every day, when the train arrived to take the workmen back to Baltimore, there was a rush to get on and secure seats. There were no platforms, no gates, no guard rails. The military authorities undertook to police the place where the workmen got on the cars with armed soldiers. This military police was never sufficient in number, however, to prevent the rush, and sometimes no police was provided.

On Saturday, December 17, 1918, the plaintiff Frank O. Stromberg, one of the workmen employed by the Maryland Dredging & Contracting Company, when trying to get on the train in the general rush, was thrown under the car by the crowd and had his foot cut off. This action was brought by him to recover damages, on the allegation that the Director General was negligent in failing to furnish a safe place for him as a passenger to take the train. On evidence, the substance of which is stated above, the District Judge directed a verdict for the defendant.

[1, 2] The general rule is well established. Persons waiting to board a train, or in the act of doing so at a place where they are invited to be, are entitled to receive from the carrier the highest degree of care for their safety consistent with the mode of conveyance and its practical operation. Carriers are not required to furnish a police force sufficient to overcome all violence of other passengers or strangers, when such violence is not to be reasonably expected; but the carrier is required to furnish sufficient police force to protect its passengers from the assaults or violence of other passengers or strangers which might reasonably be expected, and to see that its police perform their duty. This obligation extends to the protection of passengers against the rush of a crowd of persons trying to get on the train, where such a crowd is usual at the boarding place of the carrier. Kuhlen v. Boston, etc., Rrd. Co., 193 Mass. 341, 79 N. E. 815, 7 L. R. A. (N. S.) 729, 118 Am. St. Rep. 516; Dixon v. Great Falls, etc., Rrd. Co., 38 App. D. C. 591, 28 Ann. Cas. 571, and note.

[3] These duties and obligations depend, however, on the authority and power of the carrier to control and police the place where passengers take the train. Here the place for boarding the train was owned by the government, in the possession and control of the military authorities, and the carrier had acquired no right and assumed no duty, except to run a locomotive and cars safely on the military spur track, and to provide so far as it could for the safety of passengers after they had boarded the train and thus come under the protection of the train crew. The military authorities, so far from consenting to the carrier's exercising control of the place for boarding the train, had

themselves assumed the duty of policing it and restraining the crowd of workers.

The case is entirely apart from those cases holding one connecting carrier liable for the negligence of another, and a lessor liable for the negligence of a lessee, on the ground of imputed agency.

The plaintiff relies on Littlejohn v. Fitchburg R. Co., 148 Mass. 478, 20 N. E. 103, 2 L. R. A. 502, laying down this proposition:

"If the danger might have been discovered by * * * due care, the defendant will be liable, whether the defect was in the original construction of the road, or was due to a failure on the part of the commonwealth to make necessary repairs, or however otherwise it may have been caused. If the defendant carried its passengers into a place which it knew or ought to have known was dangerous, it was negligent, although it did not create, and had no right to remove, the danger."

As a general proposition this is sound; but surely it cannot be extended to require the refusal of the defendant to carry out its contract with the government to run its train in the reservation carrying workmen, because the government did not safely police a boarding station under its exclusive control.

The relation of the carrier to the boarding station was analogous rather to that of a surface street railway company to boarding places on the streets. Since the streets are not under its control, a street railway company is not ordinarily held responsible for the condition of the streets or for the crowds rushing to its cars. Cases on this subject are cited in 10 Corpus Juris, p. 913.

In Bryson v. Hines, Director General and Atlantic Coast Line Rrd. Co., 268 Fed. 290, cars were run into the government property at Camp Jackson, to be loaded with soldiers for transportation. There was a derailment, and actions for damages for the death of two soldiers. This court said:

"We think there can be no recovery for negligence in putting light wooden cars between heavy steel cars, in consequence of which the wooden cars were crushed by the derailment. The officers of the army had entire control of the arrangement of the cars, and for their negligence in this respect there was no right of action against either of the defendants."

So here, the military authorities having the entire authority and control of policing the station for boarding the train, there can be no recovery against the Director General for failure to perform that service.

Affirmed.