# PENNSYLVANIA RAILROAD COMPANY

*vs.*

## JOHN W. HOOVER.

*Accident in Railroad Station—Person Pushed on Track—Subsidiary Company—Agency.*

In an action against a railroad company for injuries caused plaintiff by being pushed off a station platform in front of a moving train, *held* that it was not by reason of an overcrowded condition of the platform that the accident occurred.     p. 255

A railroad company is not negligent in not having a guard rail along the edge of a passenger platform, when such a rail would prevent passengers from entering or leaving cars on the adjacent track.     p. 255

That, in a crowded railroad station, a gate, leading to the train platform, was opened while a train was moving on a track near the gate, with the result that the pressure of the crowd through the gate forced plaintiff on the track in front of the train, *held* to be sufficient evidence of negligence to go to the jury.     p. 256

One who, having bought a ticket, is waiting in the station to take a train, is a passenger, to whom the railroad company owes the duty of due care to protect him against any risk of injury.     p. 257

Where on a railroad station there was a large sign bearing the name of defendant company, the same designation appeared on all the trains entering and leaving the station, as well as on the official time tables, and the ticket presented by plaintiff at the station was issued by that company, it could not be contended that, not defendant company, but another company, which formed part of defendant's system, and which had issued to plaintiff a supplementary ticket entitling him to passage over a particular railroad bridge, was liable for an accident to plaintiff which occurred while he was waiting in the station.     p. 257

Where, so far as plaintiff and the public were concerned, defendant company was apparently exercising full rights of ownership and control over a railroad station and the train service there provided, any actual management of the station by another company, as against one taking a train at that station on a ticket issued by defendant company, would be attributed to an agency on the part of such other company for defendant.                                          p. 258

*Decided January 10th, 1923.*

Appeal from the Court of Common Pleas of Baltimore City (DUFFY, J.).

Action by John Walter Hoover against the Pennsylvania Railroad Company. From a judgment for plaintiff in the sum of $15,000, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Ralph Robinson,* for the appellant.

*J. Royall Tippett* and *Richard B. Tippett,* for the appellee.

URNER, J., delivered the opinion of the Court.

The declaration in this case alleges that while the plaintiff was in the defendant's railroad station in Atlantic City, New Jersey, waiting as a passenger to board a train upon which he was to travel to Baltimore, Maryland, he was pushed from the station platform under a moving train and seriously injured as a result of the defendant's negligence. It is charged that the defendant was negligent in that it permitted the platform "to be overcrowded with passengers.

without proper police protection, and not having proper
guard rails" to prevent passengers from being pushed from it
while awaiting their trains, "and further because the defend-
ant, its agents, servants and employees, opened a gate to
approach" the train which the plaintiff intended to board, at
a time when another train was passing; and, because of the
opening of the gate, the passengers, in their attempt to pass
through it, pushed the plaintiff from the platform against
and under the moving train and he thus received the injuries
which the declaration described.    The defendant has ap-
pealed from a judgment for the plaintiff entered on the ver-
dict of a jury.    The principal question we are asked to con-
sider is whether the evidence was legally sufficient to support
the recovery.

It was testified by the plaintiff that when the accident hap-
pened he was about to start on his return from Atlantic City
to Baltimore on an afternoon train scheduled to leave at a
quarter past two o'clock.    For his transportation he held the
unused portion of a round-trip ticket, which he had pur-
chased in Baltimore and by the partial use of which he had
come to Atlantic City a week earlier, and also a ticket cover-
ing the additional fare required on trains which, like the
one about to be boarded by the plaintiff, were assigned to
what was known as the Delaware River Bridge route.    Hav-
ing procured this supplemental ticket in the station building,
the plaintiff had proceeded to the concourse in the rear,
where he waited for the opening of a gate in an iron picket
fence, through which he would pass to a platform beside
which stood the Baltimore train.    The track which this train
occupied was designated as No. 3.    Parallel with it, but on
the other side of the platform along which it extended, was
track No. 2.    The picket fence stood at right angles with the
course of the tracks and at a distance of twenty-one feet from
the rear of the station building.    At intervals there were
"accordion" gates in the fence affording admission from the
concourse to the series of train platforms.    To the left of the

plaintiff as he stood facing the gate nearest his train, the floor of the concourse terminated at track No. 2 which extended beyond the picket fence and the station. There was no barrier along the part of track No. 2 on which the concourse platform abutted, as this space was sometimes needed and used for the accommodation of passengers entering or alighting from cars on that track. At the end of the picket fence near track No. 2 was a swinging gate, six feet and two inches wide, which hinged on the same post to which the accordion gate through which the plaintiff expected to pass was attached. When the swinging gate is closed it is fastened in that position by a floor bolt. Between the end of that gate and the edge of the platform at track No. 2 is an open space nineteen inches wide. On the gate is a warning sign in these words: "Danger. Do not pass around the end of this gate."

According to the plaintiff's testimony, he was standing in the rear of the crowd of passengers who were waiting for the Baltimore train gate to be opened. He was five or ten feet, as he estimates, from the open end of the concourse platform to his left. As he stood there a train was being moved on track No. 2 into a position for receiving passengers, and while one of the cars was passing the line of the picket fence, a man in uniform opened the swinging gate, and in the rush of the crowd towards and through this opening the plaintiff was swept under the moving car on track No. 2 and severely injured. A fatal result of the accident was narrowly avoided by the successful effort of the plaintiff to roll his body off the track just before it was reached by the approaching wheels of the car. In addition to a permanent injury to his left knee, he suffered a shock to his nervous system which has had serious and long-continued effects.

The testimony of the plaintiff is supported by that of his son, as to the circumstances of the accident, and it is contradicted in material details by the defendant's witnesses. But the proposal to have the case withdrawn from the jury

necessarily assumed the truth of the plaintiff's narrative. The legal sufficiency of the evidence to support a recovery is denied by the defendant upon the theory that it fails to prove any structural defects, or an overcrowded condition of the station area, to which the accident may properly be attributed, or any causal connection between the movement of the train and the plaintiff's fall.

The right of the plaintiff to have the case submitted to the jury could hardly be sustained if it depended solely upon the absence of a guard-rail from the edge of the platform from which he was thrown, or upon the question as to whether the approaches to the trains were then overcrowded. A guard-rail along the platform at the place where the accident occurred would have prevented the use of the adjacent track for the purpose already indicated. There does not appear to have been any fault in the plan or construction of the platform itself in regard to which it should be held to have been negligently maintained. The cases cited in the argument on this point presented conditions very different from those with which we are now concerned. The proof does not show that, at the time of the accident, the space in front of the train gates had been allowed to become so crowded as to subject passengers to the risk of injury because of that condition, independently of the action by which the crowd was induced to move in a particular course. It was not because of the presence of an excessive number of persons that the plaintiff was injured, but because of the sudden movement of the assembled passengers towards a gateway opened in the barrier separating them from the train which they were impatient to enter. The cases, cited in the briefs, which deal with accidents due to the overcrowding of passenger accommodations, will not be reviewed as they differ materially from the present case in their controlling facts.

The situation of the platform from which the plaintiff fell, and the presence of the crowd before the gates, were conditions which made the accident possible, but which in

themselves might exist without negligence. If the passengers had been permitted to pass only through the accordion gate in front of which they were gathered, and which was farther removed from the edge of the open platform bordering track No. 2 on which a train was moving, there would have been no inducement for the sideward rush of the crowd which carried the plaintiff off the platform and under the train. It was the opening of the swinging gate near the edge of the platform along track No. 2 that caused the crowd impulse of which the accident was the immediate consequence. If there had been no moving train on track No. 2, the effect upon the plaintiff of his fall from the platform might have been less serious. It is evident, therefore, that there were active factors which combined, under the physical conditions described, to produce the injuries for which recovery is sought in this suit. In view of the nature and effect of the accident, the fact that there was a train moving on track No. 2 must be considered in connection with the opening of the adjacent gate which caused the crowd of passengers to hasten in that direction. Such a movement naturally tended to bring a part of the crowd into close proximity to the train which was in motion. In the forward press of the passengers, under the conditions then existing, the possibility that one of them might be pushed off the platform and against or under the train was a danger which we cannot say was too remote to be anticipated. It is not a conclusion which we feel at liberty to reach and declare as a matter of law. There is a permissible inference that the opening of the swinging gate, so close to the track on which a train was being moved, and the sudden diversion to that point of a throng of passengers, created a danger to which they ought not to have been exposed. This was an appropriate question for the jury to consider and decide. It was competent for them to infer that the passengers regarded the opening of the swinging gate as an invitation to pass that way to the platform from which the Baltimore train could be entered. The usual impatience of pas-

sengers to reach their train in time to secure suitable seats, and their propensity to surge and crowd through such a way of access as the one provided in this instance, were considerations on account of which the jury might have concluded that the opening of the gate nearest to track No. 2 should have been delayed until the train on that track had ceased to move. At all events, from the combination of physical conditions and active causes which the case presents, a question arises with respect to which the court would not be justified in substituting its own judgment for that of the jury impaneled to try the issues of fact.

The argument of counsel included a discussion of the question as to the degree of care necessary to be exercised by a railroad company to provide for the safety of passengers on its station premises. But whether a passenger in such a situation is entitled to have the company observe only ordinary care for his protection, or has a right to the exercise of the high degree of care required in the course of his actual transportation, our conclusion is that there was evidence legally sufficient to warrant the submission of the case to the jury. There can be no doubt that the plaintiff was a passenger of the defendant at the time of the accident, nor that its duty was to protect him against any risk of injury on its station grounds which due care on the part of its employees might have avoided. *Jackson* v. *Hines,* 137 Md. 621; *Phila., W. & B. R. Co.* v. *Anderson,* 72 Md. 519; *Balto. & O. R. R. Co.* v. *Hauer,* 60 Md. 449.

It is contended, however, that the plaintiff is not entitled to recover in this action because of evidence, adduced by the defendant, that the station, at which the accident occurred, was under the exclusive management and control of a separate railroad corporation known as the West Jersey and Seashore Railroad Company, and because of the fact that the plaintiff had purchased a Delaware River Bridge ticket issued by it, which created the relation of passenger and carrier between him and that company. There is evidence in

the case which prevents our acceptance of this theory of defense. Above the station was a large sign bearing the defendant's name, and the same designation appeared upon all the cars of which the trains entering and leaving the station were composed. There was a similar indication of ownership and control, as to all trains using this terminal, in the official time tables issued for the information of the public. It was on presentation of a return ticket of the defendant, that the plaintiff was about to be conveyed as its passenger on its through train to Baltimore from the station in Atlantic City of which it was the ostensible owner. The Bridge ticket, purchased at a comparatively small cost, did not supersede, but merely supplemented, the principal contract for the plaintiff's transportation. The uncontradicted testimony is that the West Jersey and Seashore Railroad is a part of the defendant's system. Upon this proof the case could not justly have been taken from the jury on the ground that the plaintiff was not, when injured, a passenger of the defendant and was not entitled as such to its protection. *Pugh* v. *Washington Ry. & E. Co.*, 134 Md. 196; *Bethlehem Steel Co.* v. *Raymond Concrete Pile Co.*, 140 Md. 67; *Vonderhorst Brewing Co.* v. *Amrhine*, 98 Md. 406.

By one of the defendant's prayers, which was refused, it was proposed to have the jury instructed that if the plaintiff bought the Bridge ticket referred to, and if the station was found from the evidence to have been under the exclusive management and control of the West Jersey and Seashore Railroad Company, the verdict should be for the defendant. The terms upon which the West Jersey and Seashore Railroad forms a part of the defendant's system are not disclosed by the record. So far as the plaintiff and the public were concerned, the defendant was apparently exercising full rights of ownership and control over the station and all of the train service there provided. Under the circumstances, and as against the rights of a person in the plaintiff's situation, any actual management of the station by the other company would be attributed to the existence of an agency on

its part for the defendant corporation. This would not re-
lieve the defendant of its responsibility to passengers who
were using the station facilities by its invitation. The deci-
sion in the case of *Pugh* v. *Washington Ry. & E. Co., supra,*
and the cases there cited, effectually dispose of this question.
The prayer just referred to was, therefore, properly refused.

Other prayers of the defendant, to the refusal of which it
excepted, sought to deal separately with each of the elements
of the negligence alleged in the declaration and to have the
jury instructed that there was no evidence legally sufficient
to support the respective allegations as thus presented. It
was in combination that the conditions and acts described in
the declaration were alleged to involve the negligence com-
plained of, and the theory of the prayers, which disregarded
this interrelation of the descriptive averments, did not prop-
erly meet the issue to be determined.

The other exceptions in the record were not pressed. In
the rulings to which they refer we find no error.

*Judgment affirmed, with costs.*