BRINLEY R. MADGE *v.* ACHILLE FABRIZIO ET AL.

[No. 29, April Term, 1941.]

*Decided May 20th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*Martin W. Seabolt,* with whom was *George O. Blome* on the brief, for the appellant.

*Walter V. Harrison,* for the appellees.

JOHNSON, J., delivered the opinion of the Court.

On the morning of July 3rd, 1939, Brinley R. Madge and his two sons were riding on Carroll Island Road in a motor vehicle owned and driven by Lawrence R. Barth. Their destination was Baltimore City, but, upon entering Eastern Avenue, the automobile in which they rode came in contact with a one and one-half ton loaded beer truck proceeding northeasterly on Eastern Avenue, and as a result of the collision appellant sustained personal injuries, to recover damages for which he instituted suit against the owners of the truck and Barth, his host. After various pleadings in the case, the parties were at issue and at the trial in the Superior Court of Baltimore City Madge recovered a judgment against Barth, but as to the truck owners the court granted a demurrer prayer withdrawing the case from the consideration of the jury because of legally insufficient evidence to entitle the plaintiff to recover. Judgment was entered upon the jury's verdict, and from that judgment the present appeal is prosecuted.

The sole exception before us relates to the correctness of the court's action in granting the demurrer prayer offered by the owners of the beer truck.

At the trial it was stipulated that the accident happened at or near the intersection of Eastern Avenue with Carroll Island Road, in Baltimore County, on July 3rd, at 10 o'clock A. M., when the weather was clear and the roads dry; that Eastern Avenue is a public highway of the State and is a boulevard marked with stop signs at the intersecting highways, and at the time of the accident a stop sign was located on Carroll Island Road near its intersection with Eastern Avenue; that at the intersection there was neither a traffic officer controlling traffic, nor an automatic signal controlling traffic, and the speed limit at that point was fifty miles an hour; that the center line of Eastern Avenue was marked by a line painted upon the surface of the highway and appellant at the time of the accident was a passenger in the Barth vehicle, sitting at the extreme right end of its front, which was being operated by Barth, who was seated behind the wheel on the left side of the front, appellant's son occupying the center space. It was further stipulated that appellees were partners trading under the firm name of West Side Distributing Company, and they were the owners of a 1939 one and one-half ton Chevrolet Truck involved in the collision and immediately prior to the accident it was being driven in an easterly direction upon Eastern Avenue by one Grieninger, who on that occasion was upon the business of the owners; further that the pavement on Eastern Avenue at a point immediately west of the intersection is around twenty-four feet wide, and east of the intersection its width is about twenty-two feet, while the pavement of Carroll Island Road at a point immediately south of the accident is between twenty and twenty-one feet wide.

From a plat contained in the record it definitely appears that Eastern Avenue, the boulevard referred to in the stipulation, runs, generally speaking, east and west, while Carroll Island Road extends southwesterly from the southerly line of Eastern Avenue, so that the angle formed by the south line of Eastern Avenue and the northerly line of Carroll Island Road is acute.

The area forming that angle is taken up with a filling station with gasoline pumps to the north facing Eastern Avenue, also to its south facing Carroll Island Road. And 250 feet west of the intersection, Eastern Avenue widens to thirty-two feet, at which point a curve begins extending southwesterly.

From what has already been said, it follows that the Barth automobile was proceeding in a northwesterly direction and the driver thereof testified he intended to keep on that course until he had passed the center line of Eastern Avenue, then turn left in a southwesterly course, and in following that route he would have been required to cross Eastern Avenue diagonally. In doing this his vehicle suddenly was in collision with the beer truck.

The stipulation shows Eastern Avenue to be a favored way or boulevard within the purview of Code, art. 56, sec. 235, which provides that after stop signs have been placed by the State Roads Commission at the "entrances thereto from intersecting highways * * * it shall be unlawful for * * * any vehicle, including bicycle, to fail to stop in obedience thereto, * * *." The quoted portion of section 235 has been construed by us in *Monumental Motor Tours v. Becker*, 165 Md. 32, A. 166 A. 434; *Blinder v. Monaghan*, 171 Md. 77, 188 A. 31; *Greenfeld v. Hook*, 177 Md. 116, 8 A. 2nd 888; and *Pegelow v. Johnson*, 177 Md. 345, 9 A. 2nd 645, and from those decisions it may be definitely stated that for a driver to enter such a boulevard without stopping or, having once stopped, to enter upon the favored highway before yielding the right-of-way to vehicles thereon is an act of negligence on his part, because there is no requirement that the motorist upon the boulevard should slow down at intersections, for the reason that the purpose of the statute it to permit such vehicles to move freely, thus accelerating the flow of traffic over such favored highway; and it may also be said that the driver of a motor vehicle upon the boulevard has a right to assume that those entering thereon will respect the prohibition of the statute.

The decision in *Carlin v. Worthington*, 172 Md. 505, 192 A. 356, has by some writers been regarded as in conflict with the other decisions mentioned (4 Md. Law Review, page 207), but as pointed out by Judge Offutt, speaking for this court, in *Greenfeld v. Hook, supra,* a comparison of those decisions reveals no inconsistency, because in *Carlin v. Worthington* the principal ground on which the decision was based related solely to the question of proximate cause and not to relative rights at intersections. In view therefore of the mandatory provision of the statute, it would follow that if one drives upon a boulevard and collides with a vehicle lawfully thereon, he himself is negligent, and under such circumstances courts will not be diligent in submitting his case to the consideration of a jury simply because he unsuccessfully attempted to dodge the boulevard vehicle, for plainly, to send such a case to the jury renders the statute meaningless and the result is nothing more than statutory repeal by the judiciary.

Barth, one of the defendants, testified emphatically that before entering the boulevard he brought his vehicle to a stop at a point five or ten feet beyond the boulevard; that he was on the right side of Carroll Island Road because "cars are always coming down there." He further stated, "I stopped there and I seen I had time to get out and I went across the road and I was hit." He further stated that before entering Eastern Avenue he looked to see if there was any traffic approaching, but did not remember at the time what traffic he saw, but knew that he had plenty of time to get out no matter what traffic was coming. In answer to another question he stated he could not tell whether any traffic was approaching from his left, but he thought he saw a car coming, after first saying he could not tell how far it was when he observed it. Upon insistence of counsel he further answered, "I don't think it was as close as 100 feet." He later attempted to say he was across the center line of Eastern Avenue, but had not straightened up when his vehicle was struck, but in reply to a question as to whether the

rear of his car had crossed the center, he stated he could not say. He was also asked which vehicle ran into the other, and answered, "I couldn't tell you that. That thing happened so quick. * * *" On cross-examination, when asked whether he saw the truck prior to the accident, he stated that he could not tell whether he saw a truck or not, but he did see "a black streak in front of me"; that the first time he "saw something," it was right in front of him. There was also testimony that the collison took place on the northerly side of Eastern Avenue, but this is not especially significant in view of the testimony of the driver of the beer truck that when he saw the automobile crossing the road he swerved his vehicle to the left in attempting to avoid a collision, and this to some extent was corroborated by Officer Main, who observed parallel skid-marks for thirty-eight feet indicating that the truck had veered to the left. At the end of this mark the officer stated he found evidence of a "push-mark," which to him indicated the car had been pushed sideways by the truck.

The testimony of appellant adds nothing to what has been detailed, for he stated that while the automobile stopped as it approached Eastern Avenue, he did not know at what point it stopped, had no recollection of the accident, because he was rendered unconscious, did not recall seeing any other vehicle, neither did he recall looking in any particular direction for another vehicle. He himself did not attempt to state where the accident took place. From the quoted excerpts of Barth's testimony upon which appellant relies to have the case submitted to the jury, it is manifest that it is vague, general, indefinite and is not of such a character as to enable us to pronounce it of sufficient probative force, in view of our construction of the statute, to require the court to submit the case to the jury, for this evidence is entirely consistent with the testimony of Barth that he failed to see the beer truck until it appeared like a "black streak" in front of him, also that the collision took place as he drove upon the boulevard. We think it a fair inference, both

from what he does say as well as what he fails to say, that if he stopped before going upon the boulevard, he failed to remain stopped a sufficient length of time to perceive the presence of the truck which admittedly was there, because it struck him.

Appellant also makes the contention that because there is some testimony to the effect that the speed of the loaded beer truck exceeded the maximum allowed by law, this fact is sufficient to require the case to be submitted to the jury as showing negligence on the part of the truck driver, but this contention entirely ignores the fact that the proximate cause of the accident was not speed on the part of the truck, but the entry upon the boulevard by Barth in the path of the truck.

We concur in the view of the trial judge that since there is not shown legally sufficient evidence of primary negligence on the part of the truck driver, the case was properly withdrawn from the consideration of the jury.

*Judgment affirmed, with costs.*