ALFRED JAMES DILLEY *v.* THE BALTIMORE TRANSIT CO.

[No. 15, October Term, 1944.]

558

*Decided November 1, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*A. Frederick Taylor* with whom were *Lawrence E. Williams* and *Allers & Cochran* on the brief, for the appellant.

*Philip S. Ball,* and *Wallis Giffin* on the brief, for the appellee.

BAILEY, J., delivered the opinion of the Court.

This is an appeal by the plaintiff from a judgment for costs in favor of the defendant, entered after the trial court had granted prayers asking for a directed verdict, and a motion for a directed verdict, all submitted by the defendant at the conclusion of the plaintiff's testimony. The prayers and the motion were granted on the theory that there was no legally sufficient evidence of negligence on the part of the defendant which was the proximate cause of the accident complained of; that the plaintiff was guilty of negligence on his part directly contributing to the accident; and that the accident was due to an independent, intervening agency which was the direct and proximate cause thereof.

On March 27, 1943, the plaintiff, a young man who for eight months had been employed as a welder at the Bethlehem-Fairfield Shipyard, quit work at 7 o'clock A. M. and went directly to the passenger terminal maintained by the defendant in order that he might go home on one of its street cars. This passenger terminal or prepayment station is a fenced-in area alongside a single street car track. It is referred to in the testimony as the "bullpen". It is entered through four turnstiles located at the end of the enclosure nearest the shipyard. The fare is collected here and then the passenger remains in the enclosure until the car or cars are placed on the track. The enclosure is approximately forty feet wide and three hundred feet long. On its side next to the track there are twelve sliding gates hung on overhead rollers. The gates vary in width from three feet nine inches to eight feet eight inches. The cars are placed on the track with the entrances to the cars opposite the gates. On the

morning of the accident the plaintiff paid his fare and entered the enclosure with the witnesses, Tarr and Dittrich. At that time there were about one hundred men in the enclosure. The plaintiff was in about the center of the crowd, ten feet back from one of the gates. Two cars were placed on the track. The distance from the gate to the corresponding entrance to the car was two feet. The gates are made of board and slide along the overhead tracks. The defendant has an employee at each gate, who opens it when the cars are in place and then stands back about five feet from the opening. The plaintiff, Dilley, testified that the crowd, then numbering about one hundred and seventy-five, started to go through the gates; that it was a rowdy crowd, as always; that the gate through which he passed was about four feet wide; that he was entering the rear door of one of the cars; that he was pushed along with the crowd; that he made the first step with his right foot; that "trying to get to the next step, that is, into the street car, the crowd shoved, which threw me against some fellow that was beside me and wedged me with my right arm against the street car like that (indicating), and I was fast and couldn't get out"; that the skin was torn at the inner surface of the right wrist and that the injured hand gradually grew worse until it was necessary for two operations to be performed on it at Johns Hopkins Hospital.

The witness, Tarr, testified that he did not see the accident, but that "when we went into the bullpen the gates leading to the cars were closed, and when the gates were opened the crowd made a rush to get on the street car and those who were in the crowd were shoved right along with it and could not get out of it if they went in". When questioned as to the behavior of the crowd, he stated that "some mornings you go out there to get on the street car and they were fairly calm, and then other mornings you got out there to get on the street car, well, you wasn't sure whether you were going to make it or not" and that, when you came in with the bulk of the crowd, "then you got shoved all over the place".

The witness, Dittrich, did not see the accident, but he testified as to the behavior of the crowd at the terminal as follows: "But when you got in the bullpen some days they was very peaceful and some days they just pushed and shoved. Sometimes you could get on the street car without being shoved around, and other days you could not"; "if you got in the crowd you were always pushed around"; and "they got there early in the morning and they always want to hurry up and get a seat."

The witness, Cavanaugh, who was employed at the shipyard and had been using the facilities of the defendant since March, 1942, testified as to the system of loading passengers at the Bethlehem-Fairfield terminal, which was as detailed above, and then stated: "I have waited there a half hour to try and let the crowd get out so I wouldn't get banged up, and then I would sometimes have luck, and sometimes I would not, but generally you had to take your chance getting on."

Other witnesses testified that for a period of at least a year prior to the accident the defendant had made no changes in the facilities at this terminal, except to add two turnstiles and to enlarge the enclosure. The plaintiff also testified that during the eight months that he used the facilities he saw a number of men hurt pushing and shoving.

We feel that this testimony was sufficient to require the submission of the case to the jury so that it might pass upon the questions of primary and contributory negligence. As soon as the plaintiff had paid his fare at the turnstile and entered the enclosure he became a passenger and was entitled to the rights and protection of a passenger. *Baltimore & O. R. Co. v. State, to use of Mahone,* 63 Md. 135; *Pennsylvania R. Co. v. Hoover,* 142 Md. 251, 120 A. 526. This enclosure was maintained and operated by the defendant for the sole purpose of facilitating the loading of passengers at its Bethlehem-Fairfield terminal. The defendant, as a common carrier of passengers, was required to use the utmost degree of care, skill and diligence in everything that concerns its passengers' safety.

This duty was not limited to the mere transportation of them. It extended further and required the defendant to provide safe and convenient modes of access to its trains. *Philadelphia, W. & B. R. Co. v. Anderson,* 72 Md. 519, 20 A. 2. The evidence in this case does not disclose that there was any fault in the plan or construction of the enclosure upon which the negligence of the defendant could be predicated. But the defendant's duty to its passengers did not end there. It knew or should have known that, for many months prior to the date of the accident, there was a pushing and jostling crowd leaving the enclosure and passing over the two feet from the gates to the steps of the standing cars. It provided a guard at each gate who merely opened the gate and then stepped back five feet and let the crowd rush through without any attempt to control the traffic for the short intervening space of two feet. When a carrier has reason to anticipate the gathering of a large crowd at a station, it is bound to take such reasonable precautions as the condition to be anticipated may dictate to avert injury to a passenger by the rushing or crowding of the persons thus assembled. 32 *A. L. R.* 1316, and cases there cited.

In the case of *Maryland Dredging & Contracting Co. v. Hines,* 269 F. 781, 782, the Circuit Court of Appeals for the Fourth Circuit says: "The general rule is well established. Persons waiting to board a train, or in the act of doing so at a place where they are invited to be, are entitled to receive from the carrier the highest degree of care for their safety consistent with the mode of conveyance and its practical operation. Carriers are not required to furnish a police force sufficient to overcome all violence of other passengers or strangers, when such violence is not to be reasonably expected; but the carrier is required to furnish sufficient police force to protect its passengers from the assaults or violence of other passengers or strangers which might reasonably be expected, and to see that its police perform their duty. This obligation extends to the protection of passengers against the rush of a crowd of persons trying to get on the train,

where such a crowd is usual at the boarding place of the carrier," citing *Kuhlen v. Boston, etc., R. Co.,* 193 Mass. 341, 79 N. E. 815, 7. L. R. A., N. S. 729, 118 Am. St. Rep. 516, and *Dixon v. Great Falls, etc., R. Co.,* 38 App. D. C. 591.

While this Court in the case of *Pennsylvania R. Co. v. Hoover,* supra, has indicated that a passenger on the station premises might not be entitled to the same high degree of care required in the course of his actual transportation, it has stated that the carrier's duty was to protect him against any risk of injury on its station grounds which due care on the part of its employees might have avoided. In discussing this rule of due or reasonable care in the case of *Taylor v. Pennsylvania Co.,* 50 F. 755, 7 Am. Neg. Cas. 625, it was stated that the carrier was bound to provide a suitable number of employees to control a crowd boarding its train, so as to insure order, and preserve the peace and keep the crowd in proper control, so as to direct their movements towards the train. It has been held that a carrier which makes no effort to control the customary pushing and surging of a crowd attempting to board its cars at an elevated station is liable to an intending passenger for an injury sustained by being crowded between a car and the station platform. *Collins v. Boston Elev. R. Co.,* 217 Mass 420, 105 N. E. 353. From the testimony in this case, showing an utter failure on the part of the defendant to exercise any control over the crowd as it passed from the enclosure to the cars, we cannot say as a matter of law that it has discharged the duty which is imposed upon it with respect to its passengers in providing for them a safe mode of access to its cars. It is for the jury to determine whether the defendant was guilty of negligence by considering the care and precautions which should have been taken by it. *Hogan v. Southeastern R. Co.,* 28 L. T. R. N. S. 271; *Cousineau v. Muskegon Traction & Lighting Co.,* 145 Mich. 314, 108 N. W. 720; *Pennsylvania R. Co. v. Hoover,* supra.

It is urged however that the plaintiff was guilty of contributory negligence as a matter of law in making himself

a part of the crowd which was surging from the gates to
the cars, with the knowledge, gained from eight months'
use of the facilities, that other people had been hurt
in the crowd.   But with this contention we cannot agree.
Contributory negligence, like primary negligence, is rela-
tive and not absolute, and being relative it is dependent
on the peculiar circumstances of each particular case.
*McNab v. United Railways Co.,* 94 Md. 719, 724, 51 A.
421; *Baltimore & O. R. Co. v. Davis,* 152 Md. 427, 137 A.
30.   The plaintiff was where he had a right to be and
was injured while doing an act which he had a right to do.
But it is argued that he should have waited until the
crowd was on the cars before he endeavored to get on.
If this duty was imposed upon the plaintiff it was like-
wise the duty of every person in the crowd to hold back.
It was admitted that the defendant did not furnish suffi-
cient cars to provide seats for all passengers.   It was but
natural that a passenger who had just ceased working
on the night shift preferred to sit rather than stand dur-
ing the ride home.   Then can it be said that the plaintiff,
in taking a position ten feet back from the gate, was
failing to exercise ordinary care?   In considering the
facts, the question of ordinary care on the part of the
party injured is not to be determined in an abstract way,
but relatively as it may be connected with, and dependent
upon, the duty and obligation of the defendant.   *Balti-
more & O. R. Co. v. State, use of Hauer,* 60 Md. 449.
And we have already stated the defendant's duty in the
premises.   In order to say, as a matter of law, that the
conduct of the plaintiff contributed to the accident, the
act relied on to establish the existence of contributory
negligence must be distinct, prominent and decisive, and
one about which ordinary minds would not differ in de-
claring it to be negligent.   Where the nature and attri-
butes of an act relied on to show negligence contributing
to an injury sustained can only be determined correctly
by considering all the attending and surrounding circum-
stances, it falls within the province of the jury to pass
upon and characterize it and it is not for the court to

determine its quality as a matter of law. *State v. Carroll-Howard Supply Co. Inc.*, 183 Md. 293, 37 A. 2d 330; *Holler v. Lowery*, 175 Md. 149, 200 A. 353. We stated in *State v. Carroll-Howard Supply Co., Inc.*, supra, 183 Md. 293, 37 A. 2d 334, that "the evidence must show some prominent and decisive negligent act on the part of the plaintiff * * * which directly contributed to the accident and was the proximate cause thereof, and this negligent act must be of so prominent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds." There was no such prominent and decisive act in the instant case and the question of the plaintiff's contributory negligence should have been submitted to the jury.

A third contention of the defendant is that it is relieved of liability to the plaintiff because the accident was due to an independent, intervening agency which was the direct and proximate cause thereof. This argument is based upon the fact that the plaintiff on cross-examination testified that "when I had one foot on the step of the car somebody lurched into me and jammed me into the door frame of the car". This was but another way of saying what he had already testified to on direct examination. It does not show such a deliberate act on the part of a fellow passenger as was involved in the case of *Tall v. Baltimore Steam Packet Co.*, 90 Md. 248, 44 A. 1007, 47 L. R. A. 120. It was not an act of such a decisive character as to justify the trial court in saying as a matter of law that because of it the defendant was relieved of all liability in this case.

Presenting as it does factual issues on the questions of primary negligence, contributory negligence and independent, intervening agency, all of which should be determined by the jury, we must hold that the trial court erred in instructing a directed verdict for the defendant in this case.

*Judgment reversed, and a new trial awarded, with costs to the appellant.*