BALTIMORE TRANSIT COMPANY *v.* O'DONOVAN

[No. 93, October Term, 1950.]

*Decided February 14, 1951.*

*Rehearing denied March 13, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Hamilton O'Dunne* and *Walter V. Harrison* for the appellant.

*J. Gilbert Prendergast*, with whom were *Clark, Thomsen & Smith* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Catherine M. O'Donovan, a passenger on a bus operated by the Baltimore Transit Company, was injured as a result of a collision between the bus and an automobile operated by Donald Koppenhaver at the intersection of Loch Raven Boulevard and Thirty-third Street on July 16, 1949 at 1:30 P.M. on a clear day. She brought suit and recovered a judgment against Koppenhaver and the Baltimore Transit Company. The latter appeals here, contending that the court erred in refusing its demurrer prayer and motion for judgment N. O. V. The co-defendant did not appeal.

Loch Raven Boulevard runs north and south, with street car tracks in the center. It is about 54 feet wide. Thirty-third Street, running east and west, is about 88 feet wide from curb to curb, with sidewalks 9 feet wide. There is a grass plot 39 feet 9 inches wide in the center, separating driveways 24 feet 6 inches wide. It is admitted that there are stop signs at the northwest and southeast corners of the intersection, against traffic moving north and south on Loch Raven Boulevard, making Thirty-third Street a through highway. There are no signs against vehicles moving on Thirty-third Street.

Koppenhaver was driving south on the right side of Loch Raven Boulevard, the bus was proceeding east on

Thirty-third Street. He testified that he stopped at the stop sign near the north building line of Thirty-third Street, and allowed two westbound automobiles to pass. He saw the bus coming east, on the other side of the grass plot, about 200 feet ·from the corner, at a normal speed, about 25 miles an hour. He then pulled across to the grass plot, and saw the bus about 175 feet away. He never looked again. "When I went to start across again, why, my motor stopped on me, and just the bumper on the south side of Loch Raven, and while I tried to start the car twice, I just looked around and seen this bus coming on top of me." In reply to a question as to how long his car stood still, he said: "Well, just a few seconds, I would say, and then when I went to pull across the other part of 33rd street then it stopped on me." The front bumper was at the south curb line when the motor stalled. He did not know where the bus was at that time. In cross-examination he said when his motor stalled "my front was not clear. It drifted." It was undisputed that the left front fender of the bus struck the right rear fender of the automobile.

The statement of the bus driver, read in evidence by agreement, was to the effect that when he was about half a bus length from the intersection he saw the automobile alongside the grass plot, traveling at a slow speed. The automobile "looked liked it was going to stop so I kept going. However, the auto kept coming and when I saw it passing the curb line on my left I realized it was not going to stop. At that time I was only a very few feet from the intersection. I applied my brakes and pulled my wheel hard to the right to avoid hitting it. The auto kept going straight ahead. The left front corner of the bus struck the right rear fender of the auto."

The bus driver's version of the accident was supported by the testimony of a number of witnesses. One of these witnesses testified that the bus tried to turn into Loch Raven Boulevard and made such a quick stop that the automobile almost cleared the front of it. The only

testimony that could be considered favorable to the plaintiff was that of Mrs. Nieberding, another passenger on the bus, who testified that she was sitting by the window on the left side, watching the automobile. She said at one point she thought "the fellow had trouble with his car, or something". She realized "if the car kept coming and didn't stop there was going to be an accident." She "moved from the window over to the edge of the seat and held on to the rail, and that quick we swerved into Loch Raven Boulevard and made this sudden skid". The plaintiff was sitting on the front longitudinal seat on the right; she was thrown forward by the sudden stop. Her first intimation of danger was when the bus swerved and the brakes went on.

The rules applicable to collisions between motor vehicles at the intersection of through highways, under Code 1947 Supp., Article 66½, sections 178 and 187, have been clearly stated and applied in recent cases. The cases were carefully reviewed in *Shedlock v. Marshall,* 186 Md. 218, 46 A. 2d 349. In that case we stressed the duty of the unfavored driver not only to stop but to yield the right of way to the favored vehicle during its entire passage over the intersection. In *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 49 A. 2d 537, where the suit was by a passenger in the unfavored vehicle, the emphasis was placed upon the right of the favored vehicle to proceed upon the assumption that the unfavored vehicle would stop and yield the right of way. We held that the proximate cause of the accident was the entry of the unfavored vehicle rather than the speed of the favored one. Since the primary purpose of the statute is to speed the huge and growing volume of traffic, it would be quite impractical to require the operators of vehicles on the favored way to anticipate infractions of the peremptory command, and reduce speed at every intersection. *Blinder v. Monaghan,* 171 Md. 77, 83, 188 A. 31; *Madge v. Fabrizio,* 179 Md. 517, 520, 20 A. 2d 172.

In the instant case we think the bus driver had the right to assume that the other vehicle, in a place of safety by the grass plot, would remain there and yield the right of way. We find no merit in the contention that the bus driver was at fault in failing to observe the automobile when it made its initial stop by the stop sign, nearly 100 feet from the point of impact. Nor do we find any merit in the contention that the testimony of Mrs. Niederding, that she had time to move from the window, showed inattention on the part of the bus driver. Her testimony does not indicate that there was any appreciable interval between her movement and the action of the bus driver in applying his brakes. Her expression was "that quick". If her reaction was quicker it may have been due to nervous apprehension. In any event there is nothing in her testimony to indicate that the accident could have been avoided at the time she moved in her seat.

The chief contention is that the bus driver failed to stop "when it was, or should have been, apparent to him that the automobile was standing disabled ahead of him". It is argued that since, according to Koppenhaver, his motor stalled and he tried to start it twice, it can be inferred that the bus driver had time to stop after Koppenhaver was in a helpless position. Negligence is predicated upon failure of the bus driver to use a then existing ability to avoid the collision.

The argument suggests a false analogy to the doctrine of last clear chance, which is evoked in certain situations to avoid the bar of contributory negligence. To argue that the bus driver might have avoided striking the automobile is misleading here, because the plaintiff's injury was due to the sudden application of the brakes by the bus driver, not to the force of the impact, which seems to have been slight. Cf. *Koester Bakery Co. v. Poller*, 187 Md. 324, 330 and 332, 50 A. 2d 234. Taking Koppenhaver's testimony in its most favorable light, his car stopped, with its whole length blocking the eastbound lane a matter of seconds before the impact.

He was wholly unable to say where the bus was at that time, for he did not observe it at all after he first reached the grass plot. All of the other witnesses testified positively that the bus was so close when he entered the lane that it could not be stopped. But whether it could have been stopped sooner or not, the proximate cause of the plaintiff's injury was the unexpected intrusion into or blocking of the eastbound lane by Koppenhaver. It was not negligence for the bus driver to make an emergency stop under the circumstances.

*Judgment as to the Baltimore Transit Company reversed, with costs.*

DELAPLAINE, J., delivered the following dissenting opinion.

I think the trial judge acted correctly in submitting this case to the jury. It is true that the bus was traveling on a favored highway, and that Koppenhaver, who was driving the 1941 Oldsmobile, entered the favored highway from a nonfavored highway. It is also unquestioned that a driver on a favored highway is not required to slow down at every intersection, or to slow down because an automobile approaching at high speed is visible at a considerable distance from the intersection. Every driver before entering a through highway is required by the statute to come to a full stop and to yield the right of way to vehicles approaching on the through highway. Code Supp. 1947, art 66½, secs. 178, 187. However, even though a bus driver is traveling on a through highway, he is not necessarily free from negligence in colliding with a vehicle which entered from an intersecting highway.

The fact that a bus driver has the right of way does not relieve him from negligence in failing to keep a proper lookout and to yield the right of way when he finds that a motorist is not going to yield the right of way. While a bus driver on a favored highway may assume that a motorist will obey the law and stop before

entering the favored highway, nevertheless the fact that the bus driver has the right of way does not justify him in plunging ahead regardless of the consequences. *Carlin v. Worthington,* 172 Md. 505, 508, 192 A. 356; *Greenfeld v. Hook,* 177 Md. 116, 130, 8 A. 2d 888, 136 A. L. R. 1485; *El Paso City Lines v. Prieto, Tex. Civ. App.,* 191 S. W. 2d 59, 62; *Nichols v. City of Phoenix,* 68 Ariz. 124, 202 P. 2d 201, 206.

In considering whether a common carrier is liable to a passenger injured in its bus on the ground of its driver's negligence, the court measures the action of of the driver, not by his duty to other motorists on the highway, but by his duty to exercise the highest degree of care and skill for the passenger's safety consistent with the practical operation of the bus. *Dilley v. Baltimore Transit Co.,* 183 Md. 557, 39 A. 2d 469, 155 A. L. R. 627.

First, the testimony in this case is conflicting. The established rule is that the trial court resolves all conflicts in the evidence in favor of the plaintiff and assumes the truth of all evidence and all inferences that may naturally be deduced therefrom which tend to support the plaintiff's right to recover. *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127. The bus driver in this case stated that he was only a few feet from the intersection when he saw that the automobile was not going to stop. On the other hand, Koppenhaver testified that, when he reached 33rd Street, he did not see any car coming except the bus which was "just coming up over the hill" near the Eastern High School Stadium about a block and a half away. He declared that the bus was so far away that he thought he had ample time to cross the street safely. He further testified that when he reached the area of the grass plot, he looked again to the right and saw the bus at a point near the sign in front of the High School. He testified that he started across the eastbound lane, but his engine stalled and his automobile came to a stop when the front bumper was south of the south curb of the street. He

said that he tried twice to start the motor just before the bus crashed into his automobile.

I think there was room for an inference that the bus driver could have seen danger ahead, just as Mrs. Helen Nieberding, one of the passengers, did. Mrs. Nieberding was sitting on the left side of the bus near the front. She stated that she noticed that the man ahead (Koppenhaver) "had trouble with his car or something." I think an inference of negligence on the part of the bus driver might be drawn from the fact that this passenger, who was a witness for the transit company, indicated that the danger of a collision was so apparent that she moved from the window and held the nearest rail, whereas the bus driver, who was charged with the duty to exercise the highest degree of care and skill to safeguard the lives of the passengers, did not see any danger. I think the jury could properly find that, if the automobile had stopped, as Koppenhaver swore it did, the bus driver could have seen the automobile in time to avert a collision. It was broad daylight and the atmosphere was clear. The bus driver had an unobstructed view of the automobile for a considerable distance. Thus I think it could be rationally inferred that the bus driver failed to steer the bus carefully when he could easily have seen the automobile.

Secondly, I think the jury could properly find that the bus driver was negligent in swerving for some reason to the right. It is true that there was testimony that the automobile did not stop. But Koppenhaver testified that the engine stopped when he was in the eastbound traffic lane, and a part of his automobile was beyond the eastbound lane when it came to a stop. The eastbound lane is nearly 25 feet wide. If the bus driver had turned slightly to the left, instead of turning to the right, he might have avoided the accident.