## JAMES HENRY McCLENNY *v.* VERONICA PRZYBOROWSKI

[No. 24, April Term, 1943.]

96

*Decided June 2, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Charles T. LeViness,* III, with whom was *Merton S. Fales, Jr.,* on the brief, for the appellant.

*Roszel C. Thomsen,* with whom was *Benjamin B. Cooper* on the brief, for the appellee.

ADAMS, J., delivered the opinion of the Court.

This is an appeal by one of two defendants from a judgment in favor of appellee (plaintiff below) in an action for personal injuries brought by her against the operators of two automobiles which collided at the intersection of Eastern and Elwood Avenues in the City of Baltimore. Eastern Avenue runs east and west and Elwood Avenue runs north and south, and at the time she suffered the alleged injuries, plaintiff was a pedestrian on the sidewalk at the northwest corner of the intersection of the two avenues.

The intersection of Elwood Avenue with Eastern Avenue is designated as a "Stop Intersection" under the provisions of Ordinance No. 523 of the Mayor and City Council of Baltimore, approved June 18, 1937. This ordinance empowers the Police Commissioner of Baltimore to designate as a "Stop Intersection" any street intersection "which he may deem necessary for the safe movement and control of street traffic," and makes it unlawful for the operator of any vehicle to fail to stop in obedience to "Stop Intersection" signs which have been erected pursuant to said ordinance. Signs had been erected at the northwest and southeast corners of the intersection confronting travelers entering Eastern Avenue from Elwood Avenue and requiring them to stop before entering Eastern Avenue.

Immediately prior to the collision, the defendant McClenny was proceeding in a westerly direction on Eastern Avenue and the defendant Dwon was northbound on Elwood Avenue. The automobiles collided in about the center of the intersection and both vehicles ultimately came to rest at the northwest corner of the intersection. Plaintiff was found in an unconscious condition on the sidewalk in close proximity to both vehicles, but there was no direct evidence that she was struck by either of them.

Two questions are presented for decision: First, was there legally sufficient evidence to show that plaintiff's injuries were caused by contact with either of the auto-

mobiles in collision; second, was the sole proximate cause of the collision the failure of the defendant Dwon to stop and yield the right of way to defendant McClenny, and should the jury have been so instructed.

There was no direct testimony that plaintiff was struck by either automobile, and unless the circumstantial evidence is so convincing that the inference that she was struck by one of the automobiles is a reasonable probability, and not a mere possibility, there would be failure of proof on this point. Appellant contends that plaintiff fainted or otherwise became unconscious at about the time the collision occurred, and that she was not struck by either car, and hence there was no causal connection between her injury and the collision.

Plaintiff saw the two automobiles as they approached the point of impact, but did not see them actually come together. She heard the crash of the impact and remembered nothing more until she regained consciousness in a hospital to which she was taken. She was unable to say which automobile hit her, but testified that she thought the westbound auto (appellant's) was the one "that did the trouble to me." She also testified that appellant's automobile was coming very fast, that "he was coming at such a full speed and he was turning as he was coming along, zigzagging and going to the left more."

Defendant Dwon denied that his car hit plaintiff. He testified that the McClenny car "wound up after the accident facing the northwest with the front of his car, with the extreme front of the McClenny car just over the top of the northwest corner * * *." "McClenny's bumper and eight or ten inches of the right-hand side of his car was broken off. It cracked off and was on the sidewalk later. * * * It was lying there about six inches away from the front end of the car, from the front of his car." Dwon testified that he helped to pick up the plaintiff, who was unconscious, from the sidewalk. "She was about a foot and a half away from McClenny's car, to the north."

Defendant McClenny testified that he stopped at the scene of the collision and then let his car drift to the corner, where the front was over the curb. He was asked whether he knocked plaintiff down and replied, "I couldn't rightly say, for when I hit him I didn't see her. I didn't see her then and so I couldn't rightly say. I didn't see her until I had drifted down there and jumped out. I seen her then lying on the curb." She was then lying next to the back end of Dwon's car and his back wheel was up then against the curb. McClenny testified under cross-examination that he knew that his car did not hit the plaintiff.

Dr. Julius Goodman, who examined the plaintiff a couple of hours after the accident happened, testified that the plaintiff was then very nervous, complaining of back pain and pains in her left elbow and very severe pain in the right leg. "There was a very definite contusion or bruise over almost half of the side of the right knee and leg, which was swollen, very swollen. She was unable to walk or sit down because of the condition of her leg * * *." After X-ray examination the diagnosis was traumatic synovitis in her right knee and she also had bruises alongside the outside of the knee and the upper part of the leg.

As to the speed of the two automobiles at the time of impact, there was evidence from which the jury could find that McClenny's car was traveling at forty-five or fifty miles per hour and that Dwon's car was "going pretty good" just before the impact.

Under the circumstances outlined the jury could find without speculation that plaintiff was struck and injured by one of the two automobiles which were in collision. The nature and extent of her injuries were such that it was highly improbable that they were sustained by falling in a faint to the sidewalk. The close proximity of both automobiles to where she was lying, the testimony as to the speed of the vehicles, the fact that the bumper and part of the side of one of the automobiles was found on sidewalk near plaintiff and the nature and

extent of the injuries she suffered, all render probable that she was struck by one or both of the colliding automobiles, and that she did not sustain her extensive injuries as the result of falling to the sidewalk in a faint. The conclusion is therefore that there was legally sufficient evidence to support a finding by the jury that her injuries were caused by contact with one or both of the automobiles in the collision.

The second question is whether the "Stop Intersection" sign at the junction of Elwood Avenue with Eastern Avenue gave the defendant McClenny traveling on Eastern Avenue the same rights at the intersection that the traveler on a "boulevard" or "through street" has under Section 235 of Article 56 of the Maryland Code. The "Stop Intersection" signs erected under the Baltimore City ordinance referred to require the operator of the vehicle confronted by such a sign to stop before entering the intersecting street—in this case required the defendant Dwon traveling on Elwood Avenue to stop before entering Eastern Avenue.

Defendant Dwon testified that he stopped and looked up and down Eastern Avenue; there was nothing coming from his left and he saw a car coming from his right "quite a ways up." He started forward and stopped again with the front wheels of his car on the north rail of the eastbound car tracks in Eastern Avenue. The approaching automobile, operated by the defendant McClenny, came on and veered to the left, so that Dwon "figured he was going to hit me straight in the center," so Dwon tried to move forward to avoid the impending collision, but was unsuccessful.

The trial judge's charge to the jury was in part as follows: "This is not a case of a boulevard stop with reference to which the State law says that a man who drives up to a boulevard stop must stop and yield the right of way to people going in either direction on the boulevard. Now, the city ordinance says the man who comes there must simply stop. As to what he is to do afterward, it is silent. Therefore, I think it is perfectly

good law to decide that the ordinary rules of the road should apply; namely, that the man on the right should have the right of way over the man on the left."

With reference to the boulevard law this court said in *Greenfeld v. Hook*, 177 Md. 116, 8 A. 2d 888, 892: "The obvious and essential purpose of such rules is to accelerate the flow of traffic over through highways by permitting travelers thereon to proceed within lawful speed limits without interruption." The obvious purpose of the "Stop Intersection" ordinance is the safe movement and control of traffic, a prerequisite to the erection of the stop signs being that the Police Commissioner of Baltimore shall deem the designation of a "Stop Intersection" "necessary for the safe movement and control of street traffic." There is no purpose to expedite the flow of traffic on the favored street and nothing to suggest that any of the "Rules of the Road" otherwise applicable are suspended by the ordinance in question.

It is highly desirable that the right of way rules applicable to traffic should be uniform throughout the State and Article 56, Section 235 of the Code of Maryland (1939) clearly prohibits any modification of the general law by local ordinance. This section after defining the respective rights of operators of vehicles approaching intersecting highways, e. g., that with certain exceptions "all vehicles shall have the right of way over other vehicles * * * approaching at intersecting public roads from the left"; that "the operator of a vehicle entering a paved public highway, * * * from an unpaved public highway, or from a private road or drive, shall come to a full stop upon reaching the intersection, and yield the right of way to all vehicles approaching on such paved public highway"; that on main traveled or through highways (boulevards) the operator of a vehicle entering such highway "shall yield the right of way to all vehicles approaching on such highway," provides that:

"No ordinance, rule or regulation of any municipality or county shall change or abrogate in any way these provisions of the general law with reference to right of

way, even though any such ordinance be an attempted exercise of the police power delegated to such municipality or county."

It seems clear therefore that all applicable provisions of said Section 235 of Article 56 of the Code with reference to right of way, applied to both defendants as they approached and entered the intersection of Eastern and Elwood Avenues and that the trial judge correctly charged the jury that the ordinary rules of the road as to right of way were applicable. For the limit placed upon the authority of the municipality to modify the general law with reference to right of way prevented any enlargement of the rights or limitation of the duties of the traveler on Eastern Avenue at the intersection with Elwood Avenue.

The ordinary right of way rule being applicable, after defendant Dwon stopped before entering the intersection in question, it is necessary to determine whether there was evidence from which the jury could find that defendant McClenny was guilty of negligence contributing to the happening of the accident. There was evidence that the streets were wet at the time of the accident, that it had just stopped raining; that McClenny's car "was coming very fast," that "he was coming at such a full speed and he was turning as he was coming along, zigzagging and going to the left more"; defendant Dwon testified that McClenny was coming "mighty fast when he hit me," that "he was coming down the street mighty fast, I would say about forty-five, or maybe better, fifty, along there." There was also testimony that McClenny was running on the left of the center of Eastern Avenue at the time of the collision and that this action forced Dwon to leave what should have been a place of safety, and make a last minute effort to avoid the collision.

There was therefore sufficient evidence before the jury to support a finding that McClenny was negligent and that his negligence contributed to the happening of the accident.

The oral charge of the trial judge fully and fairly instructed the jury as to the law of the case and we find no reversible error in any of the rulings made in the course of the trial.

The judgment is therefore affirmed with costs to the appellee.

*Judgment affirmed with costs to appellee.*