## WILLIAM VINCENT PACHMAYR v. STATE OF MARYLAND

[No. 126, Initial Term, 1967.]

*Decided May 10, 1967.*

The cause was submitted to ANDERSON, MORTON, and ORTH, JJ., and MACGILL, J., Chief Judge of the Fifth Judicial Circuit, specially assigned, and JENIFER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Roland Walker* for appellant.

*Robert C. Murphy, former Attorney General,* with whom were *William T. S. Bricker, Special Attorney, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Raymond*

*Faby, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Appellant was convicted by the court sitting without a jury on April 22, 1966 of larceny after trust and sentenced to eighteen months in the Maryland House of Correction, dating from February 5, 1966. He contends on this appeal from that judgment (a) that the evidence was insufficient to support his conviction in that there was no proof of any intent to permanently deprive the owner of his property, and (b) that the court erred in failing to grant his motion to dismiss the case on the ground that he was denied his constitutional right to a speedy trial.

The essential facts are these: Appellant was employed as an automobile salesman by Federal Motors, Inc. on January 5, 1966. A 1966 Mercury Comet sedan was assigned to him as a "demonstrator" for the purpose of inducing sales of his employer's automobiles. Appellant was permitted, however, to use the car for his own personal needs. He worked steadily for one month. On Monday, February 7, 1966, he phoned his employer advising that his brother was ill, and was told to take the day off. Appellant phoned his employer again the next day, stating that he had been up with his brother the previous night, and was told by his employer "to get some sleep and come in later on." Appellant phoned his employer again on Wednesday, February 9, stating at that time, according to the testimony of Mr. Sandidge, formerly Sales Manager at Federal Motors, that appellant's brother had died. Appellant, in his testimony, denied that he told his employer that his brother had died. In any event, appellant was again told that he could remain away from work. Appellant phoned his employer again either late Wednesday afternoon or Thursday morning, February 10, at which time he was told "to bring the car in" which, according to Sandidge's testimony, meant that appellant's employment was being terminated. Appellant phoned his employer again on Friday, February 11, advising that he would return the car on Saturday, February 12. He was then told, according to Sandidge's testimony, to return the car that day. Appellant did not

return the car that day but, instead, phoned again the following Monday morning, February 14, at which time he told his employer that he would return the car that evening, and would bring with him some potential customers who were interested in purchasing a car.

Appellant testified that prior to February 11, he was not told to return the car by his employer, and that, at least prior to the late afternoon of Monday, February 14, he did not think that his employment had been terminated. He testified that he told his employer that he was unable to return the car on Friday, February 11; that he had every intention of going back to work at Federal Motors; that he parked the car on the street in front of a used furniture business, where he worked "on the side"; that the owner of that business was one Conway Ward; that the car was removed from that address sometime between 9:00 a.m. and 3:20 p.m. on February 14; that he reported the car stolen at that time and advised police that he thought Conway Ward had taken the car; and that the police told him that their investigation indicated that Ward was seen driving the car on Monday, February 14. In reporting the car missing, appellant listed the owner as Federal Motors, Inc. That appellant reported the car as stolen on the afternoon of Monday, February 14, was corroborated by a witness who overheard him make the phone call to police. Police records indicated that appellant had not reported the car as stolen, but rather requested police assistance in locating the car for the owner, Federal Motors, it then being missing.

Appellant was arrested on February 17 upon a warrant sworn out for his arrest by his employer. At that time, he told police that the car had been stolen and that he did not know the whereabouts of the vehicle.

The vehicle was recovered in Anne Arundel County on February 18 in a wrecked condition, the tires and wheels having been removed. Damage to the vehicle amounted to $533.54.

Upon this evidence, the trial judge found appellant not guilty of false pretenses, larceny and unauthorized use of the vehicle. In convicting him of larceny after trust, the trial judge stated that he believed from the evidence that appellant was told to return the car and that he understood that by reason of such

demand his employment had been terminated. The trial judge further stated that while appellant had obtained the car lawfully, he did not have it lawfully after 5:00 p.m. on Friday, February 11; that it was a "violation of law" for appellant to fail to return the car when asked to do so, and that even assuming that the car was misplaced or stolen on February 14, appellant having had no right to keep the car from February 11 to February 14 was nevertheless guilty of larceny after trust. It appears therefore that the conviction was predicated entirely upon appellant's refusal or failure to return the car upon his employer's demand.

Larceny after trust is a statutory offense, having been created by Chapter 831 of the Acts of 1945, now codified as Section 353 of Article 27 of the Annotated Code of Maryland (1957 Repl. Vol.). The statute provides, in pertinent part, as follows:

> "Any person who shall be entrusted with the possession of goods or things of value for the purpose of applying the same for the use and benefit of the owner or person who delivered the goods and things who shall fraudulently convert the same to his own use, shall, where the value of the thing so converted is one hundred dollars or more, be deemed guilty of a felony * * *."

It is, of course, well recognized that the crime of larceny after trust was created to reach those cases, not covered by the crime of common law larceny, where an individual lawfully entrusted with possession of goods thereafter converts the entrusted goods to his own use. The essential element of larceny after trust is the fraudulent conversion. *Bowen v. State,* 206 Md. 368 (1955). Thus, as in the crime of larceny, an intention to permanently deprive the owner of his goods is an essential ingredient of larceny after trust. Proof of such wrongful intent is seldom direct but is usually inferred from proven circumstances. See *Weaver v. State,* 226 Md. 431 (1961); *Putinski v. State,* 223 Md. 1 (1960) and *Martel v. State,* 221 Md. 294 (1960).

If, as it appears, the trial judge based his conviction upon the appellant's mere refusal to return the car to his employer,

we think his judgment would be clearly erroneous, the requisite felonious intent not having been considered by him as an essential element of the crime. If, on the other hand, the trial judge did consider the element of felonious intent in arriving at his judgment of conviction, we think that the circumstances of this case are such that an intent permanently to deprive the owner of his vehicle cannot be rationally inferred from the evidence. Certainly, the mere fact of wrongful possession of the vehicle would not, standing alone, justify the inference that appellant intended to permanently deprive Federal Motors of possession of the demonstrator, particularly in view of appellant's constant communication with his employer and continuing recognition of its ownership of the vehicle. Additionally, there was no evidence to connect appellant with either the removal of the car to Anne Arundel County, with damaging it, or with stripping it of its wheels and tires. Then, too, the evidence that Conway Ward was seen driving the vehicle on Monday, February 14—the day it was reported missing—was uncontradicted by the State. We hold, therefore, that the evidence does not support a finding by the trial court of a rational inference beyond a reasonable doubt or to a moral certainty that the appellant fraudulently converted the vehicle to his own use. In so concluding we recognize that it is for the trial court, and not the appellate court, to be convinced beyond a reasonable doubt of guilt and that if the evidence and proper inferences therefrom were sufficient to warrant the trial judge in reaching the conclusion that the accused was guilty beyond a reasonable doubt, this court must affirm. As indicated, however, we find no legally sufficient evidence to support a finding of an intention on the part of appellant to permanently deprive Federal Motors of their property in the vehicle. As the court observed in reversing the conviction in *Johnson v. State,* 227 Md. 159 (1961), the conjectures of the trial judge might be entirely correct but a conviction without proof cannot be sustained under the laws of this State.

We find no merit in appellant's contention that he was denied a speedy trial. He was presented by the grand jury on February 28, 1966, indicted and arraigned within two weeks thereafter and trial scheduled for April 1, 1966. One of the

State's principal witnesses not being available on April 1, the trial was postponed and rescheduled for April 20. The State's witness did not appear on that date and trial was rescheduled for April 22, on which date the case was actually tried. We think, under the circumstances, that the court's denial of appellant's motion to dismiss for lack of a speedy trial was clearly correct. See *Jones v. State*, 241 Md. 599 (1966); *State v. Murdock*, 235 Md. 116 (1964) and *Swift v. State*, 224 Md. 300 (1961).

*Judgment reversed and case re-manded for a new trial.*