988 A.2d 1059

**SCAPA DRYER FABRICS, INC., et al.**

v.

**Carl L. SAVILLE.**

**No. 540, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Feb. 2, 2010.

---

334

David J. Shuster (Ezra S. Gollogly, Kramon & Graham, PA, Malcolm S. Brisker, Goodell, DeVries, Leech & Dann, LLP on the brief), Baltimore, for appellant.

Michael T. Edmonds (Timothy J. Hogan, Law Offices of Peter T. Nicholl on the brief), Baltimore, for appellee.

Panel: KRAUSER, C.J., MEREDITH and MATRICCIANI, JJ.

## ON MOTION FOR RECONSIDERATION

MATRICCIANI, J.

Appellee, Carl L. Saville ("Saville"), brought suit in the Circuit Court for Baltimore City against appellants, Scapa Dryer Fabrics ("Scapa") and The Wallace & Gale Asbestos Settlement Trust ("W & G"), and against three other parties, alleging that his exposure to their asbestos-containing products caused his mesothelioma and carcinoma. Appellee settled with the three other parties and proceeded to trial against appellants. Appellants brought cross-claims against the settling defendants (the "Cross–Defendants") and alleged that they were joint tort-feasors. After a trial of appellee's claims and appellants' cross-claims, a jury found the appellants liable and found the Cross–Defendants not liable. Scapa moved for judgment notwithstanding the verdict ("JNOV") or a new trial on appellee's original claims and on its own cross-claims, while W & G moved for JNOV only on its cross-claims. The trial court denied these motions, and appellants filed timely notices of appeal.

### QUESTIONS PRESENTED

Scapa presents five questions for our review, which we have separated and rephrased for clarity:

I. Did the trial court err when it denied appellant's motion for judgment or for judgment notwithstanding the verdict on appellee's claims against appellant?

II. Did the trial court err when it denied appellant's motion for judgment notwithstanding the verdict on appellant's cross-claims against the Cross–Defendants?

III. Did the trial court err when it did not reduce the judgment for appellee to account for payments appellee received from certain bankruptcy settlement trusts?

IV. Did the trial court err by excluding deposition testimony of appellee's co-worker on the issue of alternate exposure?

V. Did the trial court err by admitting evidence of appellant's knowledge of asbestos hazards post-dating appellee's exposure to appellant's products?

W & G joins in Question II, with regard to its own cross-claims, and incorporates by reference Scapa's arguments.[1]

For the reasons set forth below, we shall affirm the judgment of the trial court.

## FACTS AND PROCEEDINGS

From 1964 to 1978, appellee worked at the Westvaco Pulp and Paper Mill (the "Westvaco Mill") in Luke, Maryland. During the relevant time period, appellee was a "broke hustler" responsible for cleaning dryer felts. Dryer felts are massive fabric sheets, approximately twenty feet wide and over one hundred feet long, which were installed at various positions on several large machines in the mill. The felts move around large metal drums at high speed and provide a permeable surface upon which to dry slurry, which becomes paper. Appellant worked on machines number eight and nine and cleaned any felt that needed to be cleaned.

Scapa supplied the Westvaco Mill with dryer felts, some of which contained asbestos and were in use for approximately 13 months between 1968 and 1970, on the machine where appellee was stationed. Those dryer felts were composed of approximately 64.7% chrysotile asbestos, encased in tightly woven material and coated with resin. Appellee introduced expert testimony from Dr. James Millette, Ph.D., an environ-

---

1. W & G's question presented includes the new trial portion of its motion, but the body of its brief argues only that W & G was "entitled to judgment notwithstanding the verdict as to the cross claims ..." The brief then adopts co-appellant Scapa's arguments by reference, which arguments do not include the new trial issue. We conclude that the reference to a new trial in W & G's question presented was nominal and therefore only address whether W & G was entitled to a JNOV on its cross-claims.

mental scientist specializing in particle contamination, who opined that the felts released respirable asbestos dust when appellee and his co-workers cleaned them by scraping them and blowing them with air hoses. Appellee maintained that he inhaled that dust and provided expert medical testimony from Jerrold Abraham, M.D., and Steven Zimmet, M.D., that the dust was a substantial contributing factor to appellee's later-diagnosed mesothelioma and lung cancer. Appellee also introduced the expert testimony of Dr. Barry Castleman, Sc.D., who opined that manufacturers of products containing asbestos had reason to know of the material's hazards by the 1950's.

Scapa's products were not the only sources of asbestos in appellee's work environment.[2] Appellee worked near turbines that were fed by steam-pipes fitted with asbestos insulation. Asbestos was also present in gaskets, cement, turbines, and boilers, among other elements of appellee's work environment. In particular, appellee's testimony and responses to requests for admissions stated that he was exposed to respirable asbestos caused by products and agents of W & G, the Westinghouse Electric Corporation ("Westinghouse"), Asten–Johnson, Inc. ("Asten"), and Albany International Corp. ("Albany"), and that none of these corporations provided any warnings that their products posed health risks.

Appellee brought suit against multiple parties, including the aforementioned corporations, in 2002. At that time, W & G was in bankruptcy proceedings and was not made a defendant. Judgment from the first trial of this case was vacated by an unpublished opinion of this Court in *Scapa Dryer Felts, Inc. v. Saville,* 165 Md.App. 748 (2005)(*"Saville I"*). Upon remand, W & G had emerged from bankruptcy and Scapa brought W & G into the instant suit by a third party complaint, in 2006. Saville then filed an amendment by interlineation, adding direct claims against W & G. The trial court consolidated all of these claims. At some point before trial, appellee entered settlement agreements with Westinghouse, Asten, and Albany

---

**2.** The jury also heard evidence that appellee was a life-long smoker, but this issue is not germane to the instant appeal.

(collectively, the "Cross–Defendants"). Appellants subsequently brought cross-claims for contribution against those three Cross–Defendants.

At trial, the court made two evidentiary rulings (of many) that are at issue in this appeal. First, the trial court excluded testimony of one of appellee's coworkers, Mr. Howard Shoemaker ("Shoemaker"), which had been taken at a video deposition in 2003 and used in the course of *Saville I.* Shoemaker's testimony described thermal insulation work and the consequent dust that surrounded appellee. Shoemaker testified that the insulated pipes were in the ceiling, floors, and walls, and that appellee did not wear a dust mask and received no warnings about the dust. Saville sought to introduce Shoemaker's testimony, and W & G moved, *in limine,* to exclude it. Although Scapa initially objected to the Shoemaker testimony, Scapa later sought its introduction to bolster Scapa's "alternate exposure" defense. The trial court heard the parties' arguments on the matter and granted W & G's motion to exclude the testimony, holding that it was procedurally inadmissible under the framework of Maryland Rule 2–419.[3] Second, the court allowed appellee to introduce documents that post-dated appellee's exposure and tended to show that Scapa was aware of the dangers of asbestos. The evidence included miscellaneous documentary evidence from 1976, 1977, and 1982, all tending to show that Scapa was aware of the dangers of asbestos in its various forms (the "Post–Exposure Evidence").

Because of the unique circumstances of this case, appellants were put in an unusual situation vis-à-vis the Cross–Defendants. Appellee's theory of causation was that each asbestos exposure was a substantial contributing factor to his injuries, so that the appellants and Cross–Defendants' fates were intertwined, to a certain extent. It appears that neither Scapa nor

---

3. The trial court held that the deposition testimony did not fit into either of the two possible hearsay exceptions for deposition testimony because W & G had not received "due notice" of the deposition required by Maryland Rule 2–419(a)(3) and had not been represented by a predecessor in interest under 2–419(c).

W & G wanted to hold the Cross–Defendants liable *per se,* fearing that this would necessarily imply that the appellants, themselves, were also liable. Thus, Scapa proposed that the court hold a bench trial on its cross-claims *only if* Scapa were to be found liable. The court refused to parse the trial as requested and, citing the mandates of Rule 2–325, put all issues before the jury, including the Cross–Defendants' liability. At this point, appellants and appellee entered into an agreement whereby Scapa agreed to curtail its evidence against the Cross–Defendants and neither party would move for judgment on the cross-claims, ensuring that the question of cross-liability would reach the jury.

The end result of the foregoing was a rather unusual trial on the cross-claims with no one to defend them, during which appellants simply read evidence into the record. Much of this evidence was drawn from Saville's testimony, responses to requests for admissions, and answers to interrogatories, and all tended to show that appellee was exposed to asbestos from the Cross–Defendants' products. At the close of evidence on the cross-claims, which was the close of all evidence, the following exchange took place regarding the parties' various motions and renewals:

[SCAPA]: Judge, we wanted to renew our motion—

THE COURT: Yes.

[SCAPA]:—motion and the testimony of our witnesses we believe shows that we should prevail, Judge.

THE COURT: All right. [sic] I'll deny the motion for both parties for the same—

[W & G]: And renew mine.

THE COURT: Wallace & Gale motions.

[SCAPA]: And we also have what we filed originally in the court—

THE COURT: Yes, for the same reasons on the same grounds and you'll reserve all those arguments for post-trial motions and anything else you may raise.

The jury deliberated and returned a verdict against appellants, finding that their products were "a substantial contrib-

uting factor in causing an asbestos related disease or illness to [appellee] Carl Saville[.]" The jury further found that both appellants negligently failed to warn appellee and that Scapa was strictly liable for failure to warn, awarding damages of $1,718,000.00. Conversely, the jury found that none of the Cross–Defendants substantially contributed to appellee's injuries.[4]

Scapa moved for JNOV or for new trial on appellee's claims against Scapa and on its own cross-claims against the Cross–Defendants, while W & G filed a similar motion only on its cross-claims. In its motion for JNOV, Scapa also requested that the verdict be reduced to account for settlements from certain non-party trusts that Scapa believed represented joint tort-feasors under the Maryland Uniform Contribution Among Joint Tort–Feasors Act ("UCATA"), Maryland Code (1974, 2006 Repl.Vol.), §§ 3–1401 et seq. of the Courts and Judicial Proceedings Article ("C.J."). All of these motions were denied, but on appellee's motion to amend judgment, the trial court accounted for settlement payments from the Manville, Celotex, and H.K. Porter settlement trusts, entering a final judgment against appellants in the amount of $1,684,415.00. Appellants filed timely notices of appeal and the case is now before this Court.

## DISCUSSION

### I.

▪ Scapa argues that the trial court erred when it denied Scapa's motions for judgment and for JNOV on appellee's claims. A motion for judgment notwithstanding the verdict is evaluated the same way as a motion for judgment at close of the evidence. *Owens–Illinois v. Armstrong*, 87 Md.App. 699, 716–17, 591 A.2d 544 (1991), *aff'd in part, rev'd in part and remanded on other grounds*, 326 Md. 107, 604 A.2d 47 (1992); *Weathersby v. Kentucky Fried Chicken Nat'l Mgmt. Co.*, 86

---

4. The jury also found that none of the Cross–Defendants were negligent or strictly liable for failing to warn appellee.

Md.App. 533, 552, 587 A.2d 569 (1991), *rev'd on other grounds,* 326 Md. 663, 607 A.2d 8 (1992). We will therefore combine our analysis of Scapa's arguments that the trial court erred with respect to its motions for judgment and for JNOV.

We review the trial court's decision to allow or deny judgment or JNOV to determine whether it was legally correct. *Houghton v. Forrest,* 183 Md.App. 15, 26, 959 A.2d 816 (2008), *cert. granted,* 407 Md. 529, 967 A.2d 182 (2009) (citing *Shabazz v. Bob Evans Farms, Inc.,* 163 Md.App. 602, 643, 881 A.2d 1212 (2005)). Judgment as a matter of law is appropriate if all evidence and inferences permit only one consideration. *Smith v. Miller,* 71 Md.App. 273, 278, 525 A.2d 245 (1987). If there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case should be submitted to the jury. *Belleson v. Klohr,* 257 Md. 642, 646, 264 A.2d 274 (1970) (citation omitted). In making this determination, we assume the truth of all credible evidence and all inferences of fact reasonably deducible from it tending to sustain the non-movant's contentions. *Franklin v. Gupta,* 81 Md.App. 345, 354, 567 A.2d 524 (1990) (citing *Impala Platinum v. Impala Sales,* 283 Md. 296, 389 A.2d 887 (1978); *McGarr v. Boy Scouts of America,* 74 Md.App. 127, 536 A.2d 728 (1988)). "If, however, the evidence as a whole does not rise above speculation, hypothesis, and conjecture, and does not lead to the jury's conclusion with reasonable certainty, then the denial of appellants' motions for judgment or JNOV was error." *Bartholomee v. Casey,* 103 Md.App. 34, 51, 651 A.2d 908 (1994).

Scapa argues that the trial court should have granted judgment or JNOV in its favor because appellee did not prove causation. The parties do not dispute that the appropriate theory of causation is the "substantial contributing factor" theory, which is satisfied by the "frequency, regularity, proximity" test of exposure:

Whether the exposure of any given bystander to any particular supplier's product will be legally sufficient to permit a finding of substantial-factor causation is fact specific to each

case. The finding involves the interrelationship between the use of a defendant's product at the workplace and the activities of the plaintiff at the workplace. This requires an understanding of the physical characteristics of the workplace and of the relationship between the activities of the direct users of the product and the bystander plaintiff. Within that context, the factors to be evaluated include the nature of the product, the frequency of its use, the proximity, in distance and in time, of a plaintiff to the use of a product, and the regularity of the exposure of that plaintiff to the use of that product.

*Eagle–Picher Indus., Inc. v. Balbos*, 326 Md. 179, 210, 604 A.2d 445 (1992) (internal citations omitted). Exposure can be demonstrated circumstantially. *Id.* at 210, 604 A.2d 445 (citing *Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prods.*, 786 F.2d 1225, 1228 (4th Cir.1986) ("The evidence, circumstantial as it may be, need only establish that [plaintiff] was in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in that area, not just the product handlers, inhaled.")).

Scapa puts forth four arguments in support of its primary contention that appellee failed to prove causation.

▮ First, Scapa devotes a significant portion of its brief to describing Scapa's "unique product" and the ways in which its physical characteristics, combined with the excessive moisture and ventilation in the paper mill environment and the fact that felt integrity was paramount, made it "exceedingly unlikely" that a mill worker would ever be exposed to asbestos from Scapa's dryer felts. Although these facts are not referenced in Scapa's argument section, we presume that Scapa brought them to our attention in order to argue a sort of reverse *res ipsa loquitur*, i.e., that the jury could not have found rationally that Scapa's product exposed appellee to asbestos. However, appellee provided competent expert testimony that Scapa's product, as used by appellee, would discharge respirable asbestos.

Second, Scapa argues that the jury could only speculate that appellee actually scraped Scapa's product because 1) it was impossible to tell whether a particular felt was Scapa's or contained asbestos and 2) because Scapa's felts ran only on the second position of machine nine, whereas appellee worked "mostly" at the first position of that machine and never directly testified that he worked at the second position. While Scapa is correct that there is no *direct* evidence that appellee worked with a Scapa dryer felt containing asbestos, there is more than enough *circumstantial* evidence to conclude that appellee performed a significant amount of work on Scapa's product.

The evidence showed that appellee worked on a machine (nine) running one of Scapa's asbestos-containing felts for more than a year. During that time, he and his coworkers cleaned the felts with an air hose daily, and they scraped the felts clean once or twice each week. Both of these activities created substantial amounts of dust that blanketed appellee. Although the evidence proved that, at any given time, an unknown number of felts ran at separate positions on the machine, the evidence also showed that this number could have been no more than a handful. And though appellant spent *most* of his time on a position where the Scapa felt was known not to have run, that still left up to half of his time divided among the remaining felts, one of which was known to be Scapa's asbestos-containing felt. Taken together, this evidence proved that appellee was significantly exposed to Scapa's product, which is all that the law requires in order to uphold the trial court's denial of judgment or JNOV.

Third, Scapa argues that appellee proved no more exposure than plaintiffs in two cases where judgments or JNOV's were affirmed, *Anchor Packing v. Grimshaw*, 115 Md.App. 134, 692 A.2d 5 (1997), *rev'd on other grounds sub nom., Porter Hayden Co. v. Bullinger*, 350 Md. 452, 713 A.2d 962 (1998), and *Reiter v. ACandS, Inc.*, 179 Md.App. 645, 665, 947 A.2d 570 (2008), *cert. granted, Reiter v. Pneumo Abex*, 405 Md. 506, 954 A.2d 467 (2008). *Grimshaw* upheld a judgment in favor of the defendant where there was "no evidence that [plaintiff]

worked in the same area as [defendant's workers] except in the warehouse, and that was for at most an hour." 115 Md.App. at 207, 692 A.2d 5. Viewed in a light most favorable to appellee, the evidence in this case establishes much more than a single hour of exposure, so that the *Grimshaw* decision does not control. We summarized the exposure evidence in *Reiter*, as follows:

While Square D crane brakes may have been used in the tin mill, there was no testimony that Square D was the exclusive supplier of crane brakes in that mill. Indeed, there were approximately a dozen different manufacturers' crane brake assemblies used in the various Sparrows Point facilities. Further, and as explained *supra*, the tin mill was made up of several other mills, covering an area of approximately 480 acres. The most that can be shown is that there is some probability that a Square D brake assembly was located somewhere in the tin mill at the same time that Mr. Reiter was also in the mill. To infer from that information that Mr. Reiter was exposed to Square D brake linings that were expelling respirable asbestos fibers with the proximity, regularity, and frequency required by *Balbos* would be speculation, at best.

179 Md.App. at 665, 947 A.2d 570.

Unlike *Reiter*, the evidence in this case conclusively established that plaintiff worked in close proximity to Scapa's asbestos-containing felt for a significant period of time, leaving him covered in dust. Although the evidence in this case is, as in *Reiter*, circumstantial and, by its nature, establishes only "some probability," the evidence here establishes a much higher probability that appellee was exposed to asbestos than did the evidence in *Reiter*. This is all that is needed to bring the issue before the jury. *Cf. McClenny v. Przyborowski*, 182 Md. 95, 98, 32 A.2d 365 (1943) (no failure of proof where circumstantial evidence proves a reasonable probability, and not a mere possibility). For these reasons, *Reiter* fails to control the disposition of this case.

Finally, Scapa argues that the evidence against the Cross–Defendants proved that appellee had more exposure to the Cross–Defendants' products than to Scapa's products, and that the jury's verdict is therefore inconsistent and warrants a JNOV.[5] As the Court of Appeals explained in *Owens–Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 521–22, 682 A.2d 1143 (1996):

> Our first order of business is to reiterate longstanding Maryland law that it is not the province of an appellate court to express an opinion regarding the weight of the evidence when reviewing judgment on a jury verdict. Even if a jury verdict is "inconsistent" in the sense that certain findings of fact cannot logically be reconciled with each other, we will normally not reverse a jury's verdict either in a civil or a criminal case.

(internal citations omitted). We nevertheless note that Scapa argues that evidence, drawn from Saville's testimony and responses to requests for admissions, "conclusively established" that he was exposed to more asbestos from the Cross–Defendants' products than from Scapa's. This rests in part on an incorrect interpretation of Rule 2–424(d).[6]

The *Garrett* decision informs our opinion on this issue:

> We also note that we are mystified by [appellant]'s insistence that plaintiffs made "binding" admissions as to the liability of cross-defendants during argument. The plaintiffs' counsels could not "bind" the jury, nor parties whom they did not represent, to liability simply because they argued to the jury that they had introduced sufficient

---

**5.** Alternatively, Scapa argues that this logical inconsistency warrants a JNOV in its favor against the Cross–Defendants, which we address in Part II of our Discussion.

**6.** Maryland Rule 2–424(d) provides:

**Effect of admission.** Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment.... Any admission made by a party under this Rule is for the purpose of the pending action only and is not an admission for any other purpose, nor may it be used against that party in any other proceeding.

evidence to hold certain cross-defendants liable. [Appellant]'s position is illogical; the jury was clearly capable of disagreeing with the plaintiffs' assessment of the weight of the evidence in the case, and apparently did so.

343 Md. at 523, 682 A.2d 1143. *Garrett* addresses an alleged admission of liability, while in the present case we have merely statements of fact. Nevertheless, it would be contrary to logic and the obvious purpose of that rule if one party's admissions were binding upon another party.

 Saville's testimony and responses to requests for admissions were the primary evidence introduced against the Cross–Defendants. The record reveals scant other evidence establishing liability on the part of the Cross–Defendants. The jury was not bound to accept that evidence as conclusive of liability, and therefore did not contradict itself when it found appellants liable and the Cross–Defendants not liable.

The evidence in this case, taken in a light most favorable to appellee, does not lead to the inexorable conclusion that Scapa was not liable and therefore gives us no reason to overturn the trial court's decision to deny Scapa's motions for judgment or JNOV.

## II.

 Appellants argue, jointly, that the trial court erred when it denied their motions for judgment notwithstanding the verdict on their cross-claims. Appellee argues that appellants did not meet the JNOV prerequisites of Maryland Rule 2–532 because they had not moved for judgment at any point during trial. To rebut this procedural argument, appellants contend, first, that the parties' mutual agreement to refrain from moving for judgment did not act as a waiver of their respective rights to move for JNOV. Second, appellants maintain that the trial court reserved their motions for post-trial proceedings. Appellee counters that the trial court only reserved *renewals* of motions for judgment already made and that, without having moved for judgment, appellants had nothing to renew that could support a motion for JNOV.

Maryland Rule 2–532 states that, "[i]n a jury trial, a party may move for judgment notwithstanding the verdict *only if* that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion." Md. Rule 2–532(a) (emphasis added). The Court of Appeals addressed Rule 2–532 at some length in *GMC v. Seay*, 388 Md. 341, 879 A.2d 1049 (2005), holding that the "mandatory and unambiguous" language of Rule 2–532(a) precluded a defendant who failed to renew his motion for judgment from moving for JNOV. *Id.* at 355–56, 879 A.2d 1049. The Court elaborated:

Historically, our motion for JNOV was never meant to be simply a guide to follow but rather to set forth a precise and unambiguous requirement for the trial court. We abide by the plain language of Md. Rule 1–201(a), which, in part, states that, "these rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word 'shall' or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute." As we have said time and time again, the Maryland rules are "precise rubrics," which are to be strictly followed. Maryland case law is well settled on this issue.

*Id.* (internal citations omitted). Citing federal case law on Rule 50 of the Federal Rules of Civil Procedure, a progenitor of Maryland Rule 2–532, the Court explained, *id.* at 358, 879 A.2d 1049:

The requirement that a party must renew the motion for judgment at the close of all the evidence serves two fundamental purposes. First, renewal of the motion enables the trial court to examine the sufficiency of all the evidence before submitting the question to the jury. And second, it alerts the opposing party to any defect in its case, thereby affording it an opportunity to cure any such defect.

The Court of Appeals considered and rejected several exceptions to Federal Rule 50 established by federal case law,

including the Seventh Circuit's ruling in *Szmaj v. Am. Tel. & Tel. Co.,* 291 F.3d 955 (7th Cir.2002). The *Szmaj* court held that where a trial court has reserved ruling on a motion for judgment, the moving party need not renew its motion in order to file for JNOV. *Seay,* 388 Md. at 358 n. 16, 361 n. 17, 879 A.2d 1049. Continuing, the court broadly rejected the exceptions found in federal case-law:

> We are not inclined to depart from our state court jurisprudence of strict compliance with the procedural requirements of Rules 2–519 and 2–532 in favor of the more flexible interpretation of Federal *Rule 50* as recognized by a number of federal circuits. Even if we were, however, GM still would not prevail.... [T]here was no indication from the trial judge that GM need not renew its motion at the close of all the evidence as mandated by the federal exceptions.

*Id.* at 360–361, 879 A.2d 1049.

The Court of Appeals' *Seay* opinion mandates "strict compliance" with Rule 2–532. Even if appellants were able to navigate around that mandate, they would have to demonstrate to our satisfaction that the rule's two "fundamental purposes" were met by other means. The record before us does not support that contention. The stipulated agreement placed on the record by counsel merely stated:

> The parties are going to stipulate that [the Cross–Defendants] go on the verdict forms as potential shares. There will be no judgment from the pleadings on them.

> Scapa will put into evidence with respect to those—we are going to truncate what we are going to offer to Your Honor. And it will be verified interrogatories about them and some documents, but that we won't need to get into the issue of all these other coworker depositions ...

The agreement never mentioned an intent or request to reserve the right to move for JNOV without first moving for judgment, as required by Rule 2–532. The agreement appears to eliminate the trial court's role in evaluating the sufficiency of the evidence on the cross-claims before submit-

ting the questions to the jury. While it may have put the Cross–Defendants on notice as to what evidence would be introduced, the fact that no discussion of that evidence ever occurred on the record may just as well suggest that the Cross–Defendants considered it legally insufficient, but were willing to have the jury deny the cross-claims. That, in fact, is what happened.

No motion for judgment was ever made as to the cross-claims and therefore counsel's request, at the conclusion of the evidence, to renew its motions cannot include such a motion. The trial judge's concurrence to "reserve all those arguments for post-trial motions and anything else you may raise" cannot be a reference to the cross-claims, either. Thus, we are left with a rather vague stipulation that fails to meet the procedural requirements for presentation of a motion for JNOV.

For all of these reasons, we are not willing to disturb the trial court's denial of that motion.

## III.

Scapa argues that the trial court erred when it did not reduce the judgment for appellee to account for payments appellee received from certain bankruptcy settlement trusts. The Uniform Contribution Among Joint Tort–Feasors Act reduces a judgment against a defendant if another "joint tort-feasor" is released by settlement:

> A release by the injured person of one joint tort-feasor, whether before or after judgment ... reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

C.J. § 3–1404. The amount recoverable from the non-settling defendant plus the amount recoverable from the settling defendant cannot exceed the plaintiff's verdict. *Hollingsworth & Vose Co. v. Connor*, 136 Md.App. 91, 139, 764 A.2d 318 (2000) (citing *Owens–Illinois, Inc. v. Armstrong*, 326 Md. 107, 126, 604 A.2d 47 (1992); *Martinez v. Lopez*, 300 Md. 91, 476 A.2d

197 (1984)). "Appellant, as the party moving for a reduction of the verdict in accordance with UCATA § 3–1404, bears the burden of proving the joint tortfeasor status of the settling parties." *Hashmi v. Bennett*, 188 Md.App. 434, 443, 982 A.2d 818 (2009).

The central question in cases such as this is, "what constitutes a joint tort-feasor?" The UCATA defines joint tort-feasors as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." C.J. § 3–1401(c). When a tort-feasor's liability is adjudicated in court or admitted in a settlement agreement, the court's inquiry ceases and judgment is reduced to account for the settlement. *Collier v. Eagle–Picher Indus., Inc.*, 86 Md.App. 38, 57, 585 A.2d 256 (1991). However, it is sometimes the case—as it is here—that the settling party is neither directly involved in the action nor admittedly a joint tort-feasor. In these circumstances, a settling party is not considered a joint tort-feasor merely because he or she enters a settlement and pays money. *See Jacobs v. Flynn*, 131 Md.App. 342, 375, 749 A.2d 174 (2000) (citing *Garrett*, 343 Md. at 532, 682 A.2d 1143). As Maryland courts have long noted, UCATA does not specify the test of liability, but something short of an actual judgment will suffice. *Swigert v. Welk*, 213 Md. 613, 619, 133 A.2d 428 (1957). Maryland courts have held that joint tort-feasor status may be established, for example, by default judgment or by "judicial determination" of joint tort-feasor status. *Jacobs*, 131 Md.App. at 375, 749 A.2d 174; *Hashmi*, at 445, 982 A.2d 818.

Scapa argues that asbestos settlement trusts taking advantage of the protections offered by Federal Bankruptcy Code, 11 U.S.C. § 524(g), should be considered joint tortfeasors in asbestos cases whose plaintiff has received distributions from said trusts. Section 524 empowers a federal court to provide special injunctive protections for a trust that, among other requirements, assumes the liabilities of a debtor that was a named defendant in actions seeking recovery for damages allegedly caused by asbestos-containing products and

pays those claims and demands. 11 USCS § 524(g)(2)(B)(i)(I, IV). Scapa argues that because its liability was founded upon substantial factor causation, any payment to appellee "for damages allegedly caused by asbestos-containing products" would necessarily constitute payment by a joint tort-feasor.

Scapa presents an interesting theory, and there is some support in case law for this proposition, but there is no evidence on the record that can support its application to this case. The burden was on Scapa to prove joint tort-feasor status of any claimed bankruptcy settlement trusts, and this was not done. Scapa claimed that appellee received payments from Eagle Picher Industries Personal Trust, the Combustion Engineering 524(g) Personal Injury Trust, and the Halliburton bankruptcy trust. However, Scapa did not introduce evidence of their distribution procedures, nor is there any evidence on the record that appellee actually received the payments alleged. The judgment in this case was reduced to account for three bankruptcy settlements, upon *appellee's* motion to amend the judgment, but the judge had no evidentiary basis upon which to grant appellant's motion to reduce the judgment for the bankruptcy trust payments.

## IV.

Scapa argues that the trial court erred by excluding deposition testimony of appellee's co-worker, Shoemaker, on the issue of alternate exposure. The trial transcript shows that the court based its decision on W & G's motion *in limine* to exclude the evidence, which argued that the deposition was not allowed by Maryland Rule 2–419. Scapa argues that the deposition was properly admissible under either section 2–419(a)(3) or section 2–419(c). Because the trial court's decision was predicated on a pure conclusion of law, we review it *de novo. State Sec. Check Cashing, Inc. v. Am. Gen. Fin. Servs. (DE),* 409 Md. 81, 111, 972 A.2d 882 (2009) (citations omitted).

Maryland Rule 2–419(a)(3) provides that, in certain circumstances in which a deponent is unavailable to testify at

trial, previous deposition testimony may be used "against any other party who was present or represented at the taking of the deposition or who had due notice thereof[.]" Despite the fact that W & G was not a party until more than three years after Shoemaker was deposed, Scapa argues that they received "due notice" under Rule 2–419(a)(3). Scapa maintains that "due notice" does not necessarily mean advance notice of the deposition's *occurrence,* but that it could also be satisfied by notice of the deposition's *introduction at trial.* This interpretation violates the commonsense interpretation of the rule that the "due notice" requirement of Rule 2–419(a)(3) refers to the notice requirements of Maryland Rule 2–412 (or a similar provision in foreign jurisdiction). The original deposition having been taken in a proceeding in Maryland, "due notice" under Rule 2–419(a)(3) in this case meant "notice of deposition upon oral examination at least ten days before the date of the deposition or a notice of deposition upon written questions[,]" per Rule 2–412(a). Any other reading of Rule 2–419(a)(3) would defeat its purpose of ensuring that a party's interests were represented at a deposition, or else waived by failure to appear and develop the testimony.

Appellant next argues that Shoemaker's testimony is admissible under 2–419(c) because parties present at the deposition were W & G's "predecessors in interest." [7] A "predecessor in interest" in Rule 2–419(c) is "any party with a similar motive to develop the testimony." *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 440–41, 601 A.2d 633 (1992). "Deposition testimony is admissible if some other party, present at the deposition, had the same opportunity and similar motive to develop the testimony as the party against whom the deposition is offered." *Id.*

---

7. The parties also argue as to whether *Saville I* was "another action" for purposes of this rule. Although we are inclined to accept appellant's argument that the actions are distinct for purposes of Rule 2–419(c), because we rest our holding on the fact that W & G was not preceded in interest, we need not decide this particular point.

Although W & G acknowledged that other "insulation-contractor defendants" were present, there is nothing to support Scapa's contention that there was an identity of interest among them. In *Zenobia,* the Court of Appeals held that manufacturers of asbestos products from a prior action were predecessors in interest to the suppliers and installers defending the *Zenobia* suit. The Court based its decision on the fact that the admissible testimony was restricted to the "state of the art," which, when proved, *automatically* attached strict liability to *all* "resellers," including manufacturers (the predecessors in interest) and assemblers (the *Zenobia* defendants). *Id.* at 442, 601 A.2d 633 (citing Prosser and Keeton, *Torts* § 99, at 697 (5th ed.1984)).

In the instant case, the Shoemaker testimony detailed the particular circumstances of appellee's exposure to different products in varying circumstances, not industry standards that necessarily applied equally to each asbestos manufacturer or distributor. The character and means of exposure to each product varied and therefore the potential testimony carried dramatically different liability implications for each party implicated by it. In contrast to *Zenobia,* each defendant present at the deposition in *Saville I* had every incentive to blame its co-defendants, to its own exclusion, including the absent W & G.

W & G did not have "due notice" of the deposition and it was therefore not admissible under 2–419(a)(3). Nor was the testimony admissible under Maryland Rule 2–419(c), because there was no predecessor to W & G's interest present at the deposition. Therefore, the trial court did not err in excluding the Shoemaker deposition testimony.

## V.

Scapa argues that the trial court erred when it admitted documentary evidence dating from a period after appellee had ceased being exposed to Scapa's products. Appellant contends that the Post–Exposure Evidence was irrelevant and therefore inadmissible under Rule 5–402, and that even if it

was relevant, it was unfairly prejudicial and therefore inadmissible according to Rule 5–403. It is firmly established that admissibility, including relevance, is left to the sound discretion of the trial court and will not be disturbed absent a showing of abuse. *Brown v. Daniel Realty Co.*, 409 Md. 565, 601, 976 A.2d 300 (2009) (citations omitted).

## A. Relevance

 Evidence is admissible only if it is relevant, meaning it must be probative of a material fact. Md. Rule 5–402; *Snyder v. State*, 361 Md. 580, 591, 762 A.2d 125 (2000). A material fact is one that is of legal consequence to the determination of issues in the case, which are dependent upon the pleadings and the substantive law. *Myers v. Celotex Corp.*, 88 Md.App. 442, 454, 594 A.2d 1248 (1991). In this case, the Post–Exposure Evidence was admissible only if it was relevant to Scapa's duty to warn appellee of the dangers of asbestos. This, in turn, depends on the scope of the duty to warn and whether it continues beyond exposure. In *Zenobia,* the Court of Appeals quoted the Washington Supreme Court's opinion in *Lockwood v. A C & S,* 109 Wash.2d 235, 744 P.2d 605 (Wash.1987), to support the proposition that a duty to warn can continue even after exposure, depending on the facts:

> "[W]e believe that if Raymark had made a reasonable effort to provide Lockwood with the information it acquired about the dangers of asbestos exposure after his retirement, the seriousness of his injury might have been reduced. Under those circumstances, Raymark had a continuing duty to warn Lockwood of the known dangers of its product after he was no longer exposed to it."

*Zenobia* at 448, 601 A.2d 633 (quoting *Lockwood* at 691). Thus, the Court of Appeals held that whether duty to warn survives manufacture or exposure is a question of fact:

> The fact that a manufacturer or seller has discontinued its asbestos product line, and the fact that the plaintiff was no longer exposed to its product, are not circumstances which should necessarily relieve the seller of its duty to warn.

Rather, these factors are relevant to a determination of what reasonable efforts to discover the danger and to warn are required. A seller is not entitled to automatic relief from its continuing duty to warn merely because it no longer manufacturers a defective product.

*Zenobia,* 325 Md. at 448, 601 A.2d 633.

Although Scapa attempts to differentiate itself from the manufacturer in *Zenobia,* there is no avoiding the fact that Scapa's argument is essentially an argument of law, foreclosed by the Court of Appeals' opinion in that case. To conclude, here, that the Post–Exposure Evidence was inadmissible as irrelevant to the duty to warn would be to conclude, as a matter of law, that Scapa's duty to warn ceased with appellee's exposure. This legal conclusion would be contrary to established precedent. The scope of a duty to warn is a question of fact, and it is incumbent upon the parties to present evidence that defines that scope. Thus, the Court held that the defendant in *Zenobia* "was not precluded from showing that it did not become aware of the need for a warning or that, in light of the fact that it no longer manufactured the product, it made reasonable efforts to warn." *Id.* In this case, appellee was free to introduce the Post–Exposure Evidence to prove that Scapa's duty to warn extended beyond exposure to its product, and Scapa was free to rebut that evidence.

## B. Prejudice

Having held that the Post–Exposure evidence was relevant, we must still address whether its probative value was substantially outweighed by dangers of unfair prejudice or confusion of the issues, which would render it inadmissible under Maryland Rule 5–403. *Decker v. State,* 408 Md. 631, 640, 971 A.2d 268 (2009) ("Relevant evidence may be excluded, however, if it is unfairly prejudicial ...") (citations omitted).

Scapa first argues that the Post–Exposure evidence unfairly bolstered the testimony of appellee's expert, Dr. Castleman. In short, we see nothing "unfair" in bolstering a witness's

testimony with otherwise admissible evidence. To the extent that Scapa can legitimately argue such "unfairness," Scapa is actually arguing that the documents were misleading and confusing. Appellant contends that because the Post–Exposure Evidence dates during the period of appellee's employment, Scapa's knowledge revealed in those documents was improperly attributed to it. We do not believe that it was beyond the jury's capacity to be aware of the fact that these documents related only to a continuing duty to warn and not to Scapa's knowledge at the time of appellee's exposure.

Finally, Scapa argues that appellee used a 1977 Scapa document to inflame the jury unfairly. Scapa cites *Dehn v. Edgecombe*, 152 Md.App. 657, 834 A.2d 146 (2003), *aff'd* 384 Md. 606, 865 A.2d 603 (2005), where we held that the trial court properly excluded evidence of the reasons a patient underwent surgery because its probative value was outweighed by the consideration that it would have "engendered massive jury sympathy for the plaintiffs of a type that might readily override mere legal reasons against a verdict in their favor." *Id.* at 669, 834 A.2d 146. In light of our relevance discussion and the innocuous nature of the document—discussing their substitution of asbestos with an equivalent material—Scapa's comparison is inapposite. Furthermore, after discussing the document during closing, counsel for appellee concluded: "That's not a warning." Taken in its entirety, it is clear that appellee was using relevant evidence to make a valid legal argument about the scope and fulfillment of Scapa's duty to warn and that the document was not, as Scapa argues, calculated to win jury sympathy unfairly.

Because the Post–Exposure Evidence was both relevant and not precluded by any of the considerations of Rule 5–403, the trial court did not err in admitting it.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY 75% BY APPELLANT SCAPA DRYER FABRICS, INC. AND 25% BY APPELLANT WALLACE & GALE ASBESTOS SETTLEMENT TRUST.**